**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

**JAMES ROBINSON**,
on behalf of himself and all others similarly situated,

*Plaintiff*,

v.

**NATIONAL STUDENT CLEARINGHOUSE**,

*Defendant*.

Civil Matter No. _________

**CLASS ACTION COMPLAINT**

**TRIAL BY JURY DEMANDED**

Plaintiff JAMES ROBINSON, by his undersigned counsel, complains of Defendant NATIONAL STUDENT CLEARINGHOUSE, alleging as follows:

## I. PRELIMINARY STATEMENT

1. Plaintiff brings this consumer class action on behalf of himself and similarly situated consumers pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, the Massachusetts Credit Reporting Act ("MCRA"), Mass. Gen. Laws ch. 93 §§ 50-67, and the Massachusetts Consumer Protection Act ("MCPA"), Mass. Gen. Laws ch. 93A §§ 1-11, seeking relief for Defendant's unlawful and excessive charges for consumer file disclosures in violation of federal and Massachusetts law.

2. Specifically, Defendant maintains vast databases housing detailed information about college students and their college enrollment history from which it sells reports to potential creditors, insurers, and employers, among others. As such, Defendant functions as a consumer reporting agency ("CRA") under the FCRA and MCRA.

3. FCRA section 1681j caps how much CRAs can charge consumers who request their own file disclosures. MCRA section 59(c) provides even greater protections for

Massachusetts residents. Defendant, however, charges consumers such as Plaintiff well in excess of the permissible caps.

## II. JURISDICTION *and* VENUE

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States, specifically 15 U.S.C. § 1681p.

5. This Court has supplemental jurisdiction over Plaintiff's claims brought under Massachusetts law pursuant to 28 U.S.C. § 1367.

6. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b)(2).

## III. *The* PARTIES

7. Plaintiff JAMES ROBINSON ("Plaintiff") is an adult individual who resides in Boston, Massachusetts.

8. Defendant NATIONAL STUDENT CLEARINGHOUSE ("Defendant") is a Virginia corporation with its principal office at 2300 Dulles Station Boulevard, Suite 220, Herndon, Virginia. Defendant does not maintain a place of business nor keep any assets within the Commonwealth of Massachusetts.

## IV. FACTUAL ALLEGATIONS

### A. *The Scope of Student Enrollment Status Reporting*

9. According to the U.S. Census Bureau, as of 2017, more than 60 percent of Americans 25 and older had attended a public or private college or university ("higher education institution").

10. Upward of 43 million people currently owe money on student loans they took out to finance their education or that of their children.

11. Nearly all borrowers of student loans—including private student loans made by banks and other private lenders, federally-guaranteed student loans or student loans originated by

the federal government—are eligible to defer payments on loans until graduation or separation from a higher education institution.

12. Higher education institutions must report student loan borrowers' "enrollment status," a record of the dates the borrower has been enrolled in school, whether they are currently enrolled, and their expected or actual graduation date. Such information determines, among other things, whether a borrower is eligible to defer payment of her student loans by qualifying for "in-school deferment," and relatedly, when any unpaid interest is added to the outstanding loan balance and when a student loan servicer applies certain interest subsidies and other benefits to the borrower's account.

13. The accurate and timely flow of this information ensures that a servicer can place private or federal loans into repayment status at the appropriate time and that borrowers' loan balances and accrued interest are calculated correctly.

14. For loans and grants made under Title IV of the Higher Education Act, the Department of Education requires colleges and universities to report information about the enrollment status of students who have received such assistance to the Department of Education via the National Student Loan Data System ("NSLDS").

15. Federal student aid servicers use the data in the NSLDS to assess borrowers' eligibility for in-school deferments.

B. *Defendant Provides "Free" Services to Colleges and Universities So It Can Amass Student Data for Credit Reporting Purposes*

16. The higher education and private student loan industry created Defendant in 1993.

17. Today, Defendant claims to be the largest third-party enrollment reporting company, with data on 99% of all students in public and private universities.

18. Defendant achieved this nearly universal coverage by offering services to higher education institutions designed to ease the administrative burden of processing and underwriting in-school deferment applications manually, *free of charge* to the institutions themselves.

19. However, in exchange for its "free" services, Defendant collects enrollment status data concerning *all* students, not just those who have private student loans or for whom federal student aid reporting requirements apply.

20. Defendant thereby is able to amass huge amounts of data about the enrollment and degree status of nearly every college and university student in the United States.

21. For private student loans, Defendant acts as a data repository for data furnished by colleges and used by student loan companies to determine borrowers' eligibility to defer payment of a debt.

22. For federal student aid, while colleges can report enrollment information directly to the NSLDS, in practice most higher education institutions outsource this function to Defendant and Defendant then passes enrollment data on to the NSLDS. This data is then used by federal student aid servicers to determine borrowers' eligibility for deferment and other benefits.

23. In addition to providing enrollment reporting services for private loan and federal aid servicers, Defendant sells the data it warehouses about these current and former students to third-party requestors for credit, employment, background screening, and other eligibility purposes as "verification" services, which Defendant variously calls DegreeVerify, EnrollmentVerify, and GradVerify, among others.

24. As such, Defendant is regulated by the FCRA and the MCRA.

C.  *The Fair Credit Reporting Act Regulates Defendant's Conduct*

25. Congress enacted the FCRA because "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(3)-(4).

26. The FCRA regulates CRAs, which the FCRA defines as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f).

27. Under the FCRA, a "consumer report" is:

> [A]ny written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for— credit or insurance to be used primarily for personal, family, or household purposes; employment purposes; or any other purpose authorized under [15 U.S.C. § 1681b].

15 U.S.C. § 1681a(d)(1).

28. As alleged above, Defendant collects information on current and former students' higher education enrollment, graduation, degree statuses, and dates of attendance (the "student information"), which it then assembles and subsequently publishes for sale in the form of verification products and services to its third party customers for the expected and actual use "as a factor in establishing the [students'] eligibility for credit," insurance, and employment.

29. The student information that Defendant collects and reports to its customers bears upon the subject consumer's "personal characteristics" because it reflects his or her level of education, field of study (e.g. major), and institutions attended.

30. Thus, Defendant is a CRA because, for a fee, it regularly engages in the practice of assembling "personal characteristic" information for the purpose of furnishing that information to third parties who use the information for permissible purposes.

31. In addition, for student loans, Defendant assembles that same student information for the purpose of providing it to private student loan servicers, who Defendant knows are using the data as the sole eligibility criteria for determining whether to defer payment of student debt. In-school deferments are "credit" under the FCRA, which defines that term to mean "the right granted by a creditor to a debtor to defer payment of debt . . . ." 15 U.S.C. § 1681a(r)(5); 15 U.S.C. § 1691a(d). Thus, the student information Defendant reports also bears upon the credit worthiness of the consumer because the information is used by creditors as the only factor in determining whether they will grant the right to defer payments for student loans, and hence extend credit, to the consumer borrower.

32. Thus, Defendant is a CRA for the separate reason that its enrollment reporting service to private student loan companies constitutes assembling consumer reports for student loan servicers who use such reports to determine eligibility for credit (here a decision to defer payment of debt).

33. As a CRA, Defendant must, upon a consumer's request, disclose to the consumer "all information in the consumer's file at the time of the request[.]" *See* 15 U.S.C. § 1681g(a). This includes the identification of each person who procured a consumer report in the prior year, or two years if for employment purposes. 15 U.S.C. § 1681g(a)(3).

34. Section 1681j(f) of the FCRA caps the amount a CRA may charge a consumer for his or her file disclosure (the "FCRA-mandated maximum allowable disclosure charge").

35. For calendar years 2015 through 2018, the maximum allowable disclosure charge was $12.00 and for calendar year 2019, the maximum allowable disclosure charge is $12.50.

36. Nonetheless, and despite the clear statutory language above, Defendant charges consumers amounts in excess of the maximum allowable disclosure charge for file disclosures.

37. Defendant achieves its unlawful overcharging through a variety of methods. First, with regard to its "DegreeVerify" or Degree Verification product, Defendant's uniform charge is $14.95. Second, for students who have attended more than one institution Defendant charges a DegreeVerify fee per school, resulting in cumulative charges for the same file disclosure. Third, in addition to its fee, Defendant also imposes a school surcharge for certain institutions. The aggregate total exceeds $12.00 and $12.50, as applicable.

D. *The MCRA Separately Regulates Defendant's Conduct*

38. The MCRA provides additional protections above and beyond those provided by the FCRA for Massachusetts residents like Plaintiff.

39. The MCRA regulates CRAs, which the MCRA defines as:

> [A]ny person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties.

Mass. Gen. Laws ch. 93 § 50.

40. Under the MCRA, Mass. Gen. Laws ch. 93 § 50, a "consumer report" is:

> [A]ny written, oral or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing or credit capacity which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit or insurance to be used primarily for personal, family, or household purposes[.]

41. In light of its above-alleged conduct, Defendant is a CRA for purposes of the MCRA.

42. Defendant's above-described verification reports are "consumer reports" for purposes of the MCRA.

43. The MCRA provides that CRAs "may impose a reasonable charge, not to exceed eight dollars" (Mass. Gen. Laws ch. 93 § 59(c) (the "MCRA-mandated maximum allowable disclosure charge") for disclosing "the nature, contents and substance of all information . . . in its file on the consumer at the time of the request, and which is obtainable based upon the identifying information supplied by the consumer when making such request[.]" Mass. Gen. Laws ch. 93 § 55(a)(1).

44. At all relevant times, Defendant undertook and continues to undertake the above-alleged actions for purposes of procuring monetary fees and/or on a cooperative non-profit basis.

45. At all relevant times, Defendant used and uses the Internet, a facility of interstate commerce, in order to furnish consumer reports.

46. At all relevant times, Defendant acted by and through its agents, servants and/or employees who acted within the course and scope of their agency or employment, and under Defendant's direct supervision and control.

47. At all relevant times, Defendant's conduct, as well as that of its agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard of federal and state law and the rights of the Plaintiff herein.

E. *The Representative Plaintiff's Experience*

48. On February 8, 2019, Plaintiff, while in Massachusetts, visited Defendant's website to obtain a file disclosure, and requested his file using the only method Defendant made available on the site.

49. Defendant's website routes students and alumni to its Verification Services if they seek to request information. Plaintiff, who has obtained Bachelors and Masters degrees, was directed to and subsequently selected "Degree and School Certificate" from the menu on Defendant's Verification Services webpage. When prompted, he specified that the purpose for obtaining the data Defendant maintains about him was to "Verify my own record(s)."

50. Defendant charged Plaintiff a total of $29.95 for the information he requested.

51. Plaintiff paid Defendant a total of $29.95 by credit card.

52. As a result of Defendant's conduct, Plaintiff was injured and suffered actual damages in the form of money paid in excess of the maximum allowable disclosure charge.

## V. CLASS ACTION ALLEGATIONS

53. Plaintiff brings this action on behalf of the following Classes for Defendant's violations of the FCRA:

***Nationwide Class***

> For the period beginning five (5) years prior to the filing of this Complaint and continuing through the date of judgment, individuals who ordered a Degree Verification or Dates of Attendance service for the indicated purpose of "Verifying my own Record(s)" and who paid Defendant.

***Massachusetts Overcharging Class***

> For the period beginning two (2) years prior to the filing of this Complaint and continuing through the date of judgment, Massachusetts residents who ordered a Degree Verification or Dates of Attendance service for the indicated purpose of "Verifying my own Record(s)" and who paid Defendant.

***Massachusetts Unfair Practices Class***

> For the period beginning four (4) years prior to the filing of this Complaint and continuing through the date of judgment, Massachusetts residents who ordered a Degree Verification or Dates of Attendance service for the indicated purpose of "Verifying my own Record(s)" and who paid Defendant.

54. The members of the Classes are so numerous that joinder of all members is impracticable. Although the precise number of Class members is known only to Defendant, Plaintiff avers upon information and belief that the members of the Classes number in the thousands. Defendant channels all verification requests through its website, pursuant to uniform practices and procedures.

55. There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members. The principal questions concern whether Defendant's standard practice willfully and/or negligently violated the FCRA and MCRA by charging consumers more than the maximum allowable amount for file disclosure allowed by law.

56. Plaintiff's claims are typical of the claims of the members of the Classes, which all arise from the same operative facts and are based on the same legal theories.

57. Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff is committed to vigorously litigating this matter and has retained counsel experienced in handling consumer class actions involving the FCRA. Neither Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this claim.

58. This action should be maintained as a class action because the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications with respect to individual members which would establish incompatible standards of conduct for the parties opposing the Classes, as well as a risk of adjudications with respect to individual members which would as a practical matter be dispositive of the interests of other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

59. Whether Defendant violated the FCRA can be determined by examination of Defendant's policies and conduct and a ministerial inspection of Defendant's business records.

60. A class action is a superior method for the fair and efficient adjudication of this controversy. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is slight because the maximum statutory damages are limited to between $100.00 and $1,000.00 under the FCRA. Management of the Classes' claims is likely to present significantly fewer difficulties than those presented in many individual claims. The identities of the members of the Classes may be derived from Defendant's records.

## VI. CLAIMS *for* RELIEF

### COUNT I
### Violation of the Fair Credit Reporting Act – 15 U.S.C. § 1681j(f)
*On behalf of Plaintiff and the Nationwide Class*

61. Plaintiff incorporates by reference the above paragraphs as though set forth at length herein.

62. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

63. Defendant is a "person" and a "consumer reporting agency" ("CRA") as defined by 15 U.S.C. §§ 1681a(b) and (f), respectively.

64. At all relevant times, Defendant was not legally authorized to charge more than the maximum allowable disclosure charge for a verification service requested by the consumer subject of the report.

65. As alleged above, Defendant violated FCRA section 1681j(f)(1) when it charged Plaintiff more than the maximum allowable disclosure charge for his verification report on February 8, 2019.

66. As alleged above, Defendant's conduct was willful.

67. In the alternative, as alleged above, Defendant's conduct was negligent.

68. Defendant is liable to Plaintiff and members of the Nationwide Class for the relief sought herein.

**COUNT II**
**Violation of the Massachusetts Credit Reporting Act**
Mass. Gen. Laws ch. 93 § 59(c)
*On behalf of Plaintiff and the Massachusetts Overcharging Class*

69. Plaintiff incorporates by reference the above paragraphs as though set forth at length herein.

70. At all relevant times, Defendant was not legally authorized to charge more than the MCRA-mandated maximum allowable disclosure charge for a verification report requested by the subject of the report.

71. As alleged above, Defendant violated MCRA section 59(c) when it charged Plaintiff more than the MCRA-mandated maximum allowable disclosure charge of eight dollars ($8.00) for his degree verification report on February 8, 2019.

72. As alleged above, Defendant's conduct was willful.

73. In the alternative, as alleged above, Defendant's conduct was negligent.

74. Defendant is liable to Plaintiff and members of the Massachusetts Overcharging Class for the relief sought herein.

**COUNT III**
**Violation of the Massachusetts Consumer Protection Act**
**Mass. Gen. Laws ch. 93A § 2**
*On behalf of Plaintiff and the Massachusetts Unfair Practices Class*

75. Plaintiff incorporates by reference the above paragraphs as though set forth at length herein.

76. As alleged above, Defendant engages in trade and commerce.

77. As alleged above, Defendant's conduct violates the MCPA because it is unfair.

78. Defendant substantially injures consumers because it requires consumers to pay more than the FCRA-mandated maximum allowable disclosure charge and more than the MCRA-mandated maximum allowable disclosure charge.

79. Finally, Defendant's unfair conduct provides no benefits to consumers or competition. Indeed, charging prices well above the FCRA- and MCRA-mandated maximum disclosure charges gives the company an unfair competitive advantage over competitors and market entrants who choose to follow the law.

80. As alleged above, Defendant's conduct caused Plaintiff to suffer the loss of money, namely the amounts above the FCRA- and MCRA-mandated maximum disclosure charges he paid to Defendant to obtain a copy of his verification report.

81. As alleged above, Defendant's conduct was a willful or knowing violation of Section 2 of the MCPA.

82. Defendant is liable to Plaintiff and members of the Massachusetts Unfair Practices Class for the relief sought herein.

## VII. PRAYER *for* RELIEF

WHEREFORE, Plaintiff prays this Honorable Court would enter judgment in favor of Plaintiff and the Classes and against Defendant and grant the following relief:

A. Certifying the proposed Classes under Federal Rule of Procedure 23 and appointing Plaintiff and his counsel to represent the Classes;

B. Awarding monetary recovery to Plaintiff and the members of the Nationwide Class pursuant to 15 U.S.C. § 1681o(a) and to Plaintiff and members of the Massachusetts Overcharging Class pursuant to Mass. Gen. Laws ch. 93 § 64;

C.  Awarding statutory damages to Plaintiff and the members of the Nationwide Class in the amount of not less than $100 and not more than $1,000 per violation of the FCRA pursuant to 15 U.S.C. § 1681n(a);

D.  Awarding punitive damages to Plaintiff and the members of the Nationwide Class pursuant to 15 U.S.C. § 1681n(a)(2) and to Plaintiff and the members of the Massachusetts Overcharging Class pursuant to Mass. Gen. Laws ch. 93 § 63;

E.  Awarding monetary recovery in the amount of actual damages or twenty-five dollars, whichever is greater to Plaintiff and members of the Massachusetts Unfair Practices Class pursuant to Mass. Gen. Laws ch. 93A § 9(3);

F.  Awarding up to three but not less than two times the monetary recovery set forth in Prayer E above to Plaintiff and members of the Massachusetts Unfair Practices Class pursuant to Mass. Gen. Laws ch. 93A § 9(3) if the Court finds that the Defendant's conduct was a willful or knowing violation of Section 2 of the MCPA ;

G.  Enjoining Defendant, pursuant to Mass. Gen. Laws ch. 93A § 9(3), from charging Massachusetts consumers sums in excess of the statutorily mandated maximum allowable disclosure charges to obtain copies of their own verification report(s);

H.  Awarding costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n and 1681o, Mass. Gen. Laws ch. 93 §§ 63 and 64, and Mass. Gen. Laws ch. 93A § 9; and

I.  Granting such other and further relief as may be just and proper.

## VIII.  DEMAND *for* TRIAL *by* JURY

83.  Plaintiff demands trial by jury on all issues so triable.

DATED: April 18, 2019

Respectfully submitted,

**JAMES ROBINSON**, *by his attorneys*,

*/s/Stuart Rossman*
Stuart Rossman, B.B.O. No. 430640
Joanna Darcus*
Persis S. Yu, B.B.O. No. 685951
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th Floor
Boston, MA 02110
Tel: (617) 542-8010
srossman@nclc.org
jdarcus@nclc.org
pyu@nclc.org

Benjamin David Elga*
Brian James Shearer*
JUSTICE CATALYST LAW
25 Broadway, 9th Floor
New York NY 10004
518-732-6703
belga@justicecatalyst.org
brianshearer@justicecatalyst.org

James A. Francis*
John Soumilas*
FRANCIS & MAILMAN, P.C.
1600 Market Street, 25th Floor
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

*petition to appear *pro hac vice* forthcoming