## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JAMES ROBINSON**, on behalf of himself and all others similarly situated, | No. 1:19-cv-10749-FDS |
| *Plaintiff*, | **PLAINTIFF'S UNOPPOSED MOTION FOR AN ORDER DIRECTING NOTICE TO THE CLASS** |
| vs. | |
| **NATIONAL STUDENT CLEARINGHOUSE**, | |
| *Defendant*. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

I.  INTRODUCTION ............................................................................................... 1

II.  STATEMENT OF THE FACTS ......................................................................... 1

    A.  Plaintiff's Claims ..................................................................................... 1

    B.  Plaintiff Thoroughly Investigated his Claims .......................................... 2

III.  TERMS OF THE SETTLEMENT ....................................................................... 2

    A.  Generally .................................................................................................. 2

    B.  The Proposed Settlement Class ................................................................ 3

    C.  The Consideration Provided to Settlement Class Members ..................... 3

        1.  Injunctive Relief ........................................ **Error! Bookmark not defined.**

        2.  The Settlement Fund ................................................................... 4

            a.  Class Member Payments ................................................. 4

            b.  Attorneys' Fees and Costs .............................................. 4

            c.  Individual Settlement and Service Award to Plaintiff ..... 5

            d.  Costs of Notice and Administration ................................ 5

            e.  No Reverter ..................................................................... 6

    D.  Releases .................................................................................................... 6

    E.  The Proposed Notice Plan ........................................................................ 6

    F.  Opt-Out Rights ......................................................................................... 7

    G.  Objections to the Settlement .................................................................... 8

    H.  Deadlines Contemplated by the Settlement Agreement ........................... 8

IV.  ARGUMENT IN SUPPORT OF DIRECTING NOTICE TO THE CLASS ...... 8

    A.  The Court Will Likely Be Able to Approve the Settlement Agreement
       Because It Is Fair, Reasonable And Adequate ....................................... 10

B.    Plaintiff and Class Counsel Have Adequately Represented the Class ................... 11

    1.    The Settlement Agreement Is the Result of Engaged, Arms-Length Negotiations Overseen by an Experienced Mediator ................................. 13

    2.    The Settlement Provides Substantial Relief for Settlement Class Members .............................................................................................. 14

    3.    The Settlement Agreement Is a Preferable Alternative to the Risks Each Party Would Face Through Continued Litigation ........................... 14

    4.    The Proposed Award of Attorney's Fees Is Fair and Reasonable ............. 16

    5.    The Method of Providing Relief Will Be Effective ................................. 17

    6.    The Settlement Treats All Settlement Class Members Fairly ................... 18

C.    The Court Will Likely Be Able to Certify The Settlement Class for the Limited Purpose of Settlement ................................................................. 19

D.    The Proposed Notice Program Is Constitutionally Sound ..................................... 21

E.    Scheduling a Final Approval Hearing Is Appropriate ........................................... 23

V.    CONCLUSION ..................................................................................................... 23

# TABLE OF AUTHORITIES

**Page(s)**

## C<small>ASES</small>

*Amchem Products v. Windsor*,
521 U.S. 591 (1997)................................................................................11, 20, 21, 22

*Bacchi v. Massachusetts Mut. Life Ins. Co.*,
2017 WL 5177610 (D. Mass. Nov. 8, 2017) ................................................. 14-15

*Barry v. Moran*,
2008 WL 7526753 (D. Mass. Apr. 7, 2008) ..........................................................20

*Bezdek v. Vibram USA Inc.*,
79 F. Supp. 3d 324 (D. Mass. 2015) ........................................................11, 13, 17

*In re Cabletron Systems, Inc. Securities Litigation*,
239 F.R.D. 30 (D.N.H. 2006) ................................................................................16

*Carter v. Shalhoub Mgmt. Co., Inc.*,
2017 WL 5634300 (C.D. Cal. Mar. 15, 2017).......................................................16

*In re Colgate-Palmolive Softsoap*,
2017 WL 7282543 ..................................................................................................11

*Duhaime v. John Hancock Mutual Life Ins. Co.*,
177 F.R.D. 54 (D. Mass. 1997)........................................................................11, 20

*Flores v. Express Services, Inc.*,
2017 WL 1177098 (E.D. Pa. Mar. 30, 2017)........................................................16

*Garcia-Rubiera v. Calderon*,
570 F.3d 443 (1st Cir. 2009)..................................................................................19

*Giddiens v. LexisNexis Risk Solutions, Inc.*,
No. 2:12-cv-2624 (ECF 55, ¶ C) (E.D. Pa. Jan. 20, 2015) ...................................13

*Gorsey v. I.M. Simon & Co.*,
121 F.R.D. 135 (D. Mass. 1988).............................................................................19

*Grace v. Perception Technology, Inc.*,
128 F.R.D. 165 (D. Mass. 1989)............................................................................21

*Hays v. Eaton Grp. Attorneys, LLC*,
2019 WL 427331 (M.D. La. Feb. 4, 2019).........................................................9, 10

*Hochstadt v. Bos. Scientific Corp.*,
  708 F. Supp. 2d (D. Mass. 2010) ........................................................................11

*Kelly v. Bus. Info. Group, Inc.*,
  2019 WL 414915 (E.D. Pa. Feb. 2, 2019) ...........................................................12

*King v. Gen'l Info. Serv's, Inc.*,
  C.A. No. 10-6850 (ECF 125) (E.D. Pa. Nov. 14, 2014).......................................16

*Lapan v. Dick's Sporting Goods, Inc.*,
  No. 1:13-CV-11390-R, 2015 WL 8664204 (D. Mass. Dec. 11, 2015)..................12

*LaRocque v. TRS Recovery Services, Inc.*,
  285 F.R.D. 139 (D. Me. 2012)..............................................................................13

*In re Lupron Mktg. & Sales Practices Litig.*,
  345 F. Supp. 2d 135 (D. Mass. 2004) ...................................................................11

*Marcum v. Dolgencorp, Inc.*,
  No. 12-cv-108 (ECF 78) (E.D. Va. Oct. 16, 2014)...............................................16

*Medoff v. CVS Caremark Corp.*,
  2016 WL 632238 (D.R.I. Feb. 2, 2017)........................................................... 10-11

*In re Nexium (Esomeprazole) Antitrust Litig.*,
  296 F.R.D. 47 (D. Mass. 2013)..............................................................................11

*Patel v. Trans Union, LLC*,
  308 F.R.D. 292 (N.D. Cal. 2015)...........................................................................13

*Patel v. Trans Union, LLC*,
  2018 WL 1258194 (N.D. Cal. Mar. 11, 2018).......................................................16

*Patrick v. Interstate Mgmt. Co., LLC*,
  No. 15-cv-1252 (ECF 49) (M.D. Fla. Apr. 29, 2016)...........................................16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  2019 WL 359981 (E.D.N.Y. Jan. 28, 2019) .............................................9, 11, 13

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)...............................................................................................21

*Ramirez v. Trans Union, LLC*,
  2017 WL 5153280 (N.D. Cal. Nov. 7, 2017) ........................................................13

*Randle v. SpecTran*,
  129 F.R.D. 386 (D. Mass. 1988)............................................................................21

*Roberts v. TJX Cos., Inc.*,
   2016 WL 8677312 (D. Mass. Sept. 30, 2016) .......................................................................15

*Robinson v. Gen'l Info. Serv's, Inc.*,
   C.A. No. 11-7782 (ECF 55) (E.D. Pa. Nov. 4, 2014) ............................................................16

*Sapp v. Experian Info. Solutions*,
   2013 WL 2130956 (E.D. Pa. May 15, 2013) .........................................................................13

*Simons v. Aegis Comm's Group*,
   No. 2:14-cv-04012 (ECF 29) (W.D. Mo. Oct. 15, 2014) ......................................................16

*Southern States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*,
   241 F.R.D. 85 (D. Mass. 2007).............................................................................................19

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995)..............................................................................................16, 17

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 131 S. Ct. 2541 (2011)...................................................................................19

*Waste Mgt. Holdings, Inc. v. Mowbray*,
   208 F.3d 288 (1st Cir. 2000).................................................................................................20

*White v. Experian Info. Solutions*,
   993 F. Supp. 2d 1154 (C.D. Cal. 2014) ................................................................................13

## S<small>TATUTES</small> & F<small>EDERAL</small> R<small>ULES</small>

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x .......................................................... *passim*

   15 U.S.C. § 1681j...................................................................................................................3, 18

   15 U.S.C. § 1681n.......................................................................................................................4

   15 U.S.C. § 1681o.......................................................................................................................4

F<small>ED.</small> R. C<small>IV.</small> P. 23 ...............................................................................................................9, 10

   F<small>ED.</small> R. C<small>IV.</small> P. 23(a) ..................................................................................................11, 19

   F<small>ED.</small> R. C<small>IV.</small> P. 23(a)(1).............................................................................................19

   F<small>ED.</small> R. C<small>IV.</small> P. 23(a)(2).............................................................................................20

   F<small>ED.</small> R. C<small>IV.</small> P. 23(a)(3).............................................................................................20

   F<small>ED.</small> R. C<small>IV.</small> P. 23(a)(4).............................................................................................20

FED. R. CIV. P. 23(b)(3) ............................................................................19, 20, 21

Fed. R. Civ. P. 23(c)(2)(B) .............................................................................21, 22

FED. R. CIV. P. 23(c)(3)............................................................................................22

FED. R. CIV. P. 23(e) ...........................................................................................8, 9, 23

FED. R. CIV. P. 23(e)(1) ..............................................................................................21

FED. R. CIV. P. 23(e)(1)(B) ....................................................................................9, 10

FED. R. CIV. P. 23(e)(1)(B)(ii) ...................................................................................19

FED. R. CIV. P. 23(e)(2)......................................................................................1, 9, 11

FED. R. CIV. P. 23(e)(2)(A) ........................................................................................11

Fed. R. Civ. P. 23(e)(2)(B) .........................................................................................13

Fed. R. Civ. P. 23(e)(2)(C) .........................................................................................14

FED. R. CIV. P. 23(f) .....................................................................................................15

Massachusetts Consumer Protection Act, Mass Gen. Laws ch. 93A §§ 1-11 ................................1

Massachusetts Credit Reporting Act, Mass. Gen. Laws ch. 93 §§ 50-67.................................1, 18

MASS. GEN. LAWS ch. 93 § 59(c)...........................................................................18

## OTHER AUTHORITIES

4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, (4th ed. 2011)........................11

Rubenstein, William B., et al., *Newberg on Class Actions* (5th ed. 2015) ....................................10

# I.   INTRODUCTION

Plaintiff James Robinson ("Plaintiff" or "Robinson") respectfully requests that the Court enter an Order Directing Notice to the Settlement Class pursuant to the Settlement Agreement that has been reached between Plaintiff and Defendant National Student Clearinghouse ("Defendant" or "NSC").   For the reasons set forth in this memorandum and the supporting documents, the settlement is fair, reasonable and adequate and serves the best interests of the Settlement Class Members.   Accordingly, Plaintiff respectfully requests that the Court (1) find that it will likely be able to approve the proposed settlement under FED. R. CIV. P. 23(e)(2) as amended, and certify the proposed Settlement Class for purposes of judgment on the Settlement; (2) approve the form, content, and method of delivering notice to the Class as set out in the Settlement Agreement; and (3) schedule a final approval hearing.

# II.   STATEMENT OF THE FACTS

## A.   Plaintiff's Claims

Plaintiff brought this lawsuit as a class action, alleging that NSC violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, the Massachusetts Credit Reporting Act ("MCRA"), Mass. Gen. Laws ch. 93 §§ 50-67, and the Massachusetts Consumer Protection Act ("MCPA"), Mass Gen. Laws ch. 93A §§ 1-11, by charging excessive amounts for reports made to verify consumers' information regarding their post-secondary education, at their request (the "Self-Verification Service").   Specifically, with respect to the Self-Verification Service, Robinson alleged that NSC charged amounts in excess of caps that the FCRA and the MCRA impose on consumer reporting agencies when providing file disclosures to consumers.   Robinson sought to represent two classes of consumers, one encompassing the 49 states outside of Massachusetts, and one of Massachusetts consumers.   *See* Dkt. 1.   NSC denies Plaintiff's allegations and denies that it committed any violation of the law.

**B.      Plaintiff Thoroughly Investigated his Claims**

Plaintiff filed his complaint on April 18, 2019.  Dkt. 1.  Soon thereafter, the parties initiated extensive arms-length settlement discussions, including a full-day, in-person mediation before the Honorable Diane Welsh (Ret.) of JAMS on August 9, 2019.  Before mediation, NSC provided disclosures including the number of class members and total amount of Plaintiff's alleged overcharge.  The parties reached an initial agreement that day and notified the Court.  Dkt. 17. Documenting a formal settlement agreement and related documents took additional time and included the preparation and exchange of drafts and a series of telephone and written negotiations concerning the specific terms and conditions of the agreement and exhibits to the agreement, including the proposed class notices and class forms.  The parties finalized their agreement on January 3, 2020, resulting in the Settlement Agreement attached hereto as Exhibit A ("Ex. A").

### III.      TERMS OF THE SETTLEMENT

**A.      Generally**

The proposed settlement is fair, reasonable and adequate, because it directly addresses the practices identified in the litigation and provides substantial benefits to Settlement Class Members. The Settlement Agreement provides for a substantive practice change, namely NSC's agreement not to assess fees in excess of the FCRA-mandated cap.  This practice change will benefit all Settlement Class Members and other consumers going forward.  NSC will also provide one verification through the Self-Verification Service to each Settlement Class Member at no cost.

The Settlement Agreement also establishes an approximately $1.9 million Settlement Fund to provide cash payments for Settlement Class Members, an individual settlement and service award for Plaintiff, and attorneys' fees and costs.  This $1.9 million amount exceeds the amount NSC allegedly overcharged the class.  NSC disclosed that the alleged overcharge to the class was $337,081.80.   NSC will separately bear all costs of notice to the class and settlement

administration.  Settlement Class Members will receive automatic payments without the need to take any action.

For purposes of directing notice to the class, the following summarizes the Settlement Agreement's terms.

**B.      The Proposed Settlement Class**

The parties have agreed to resolve the claims of the following Settlement Class:

> Those individuals who, during the Class Period, ordered a Degree Verification or Dates of Attendance service from NSC for the indicated purpose of "Verifying my own Record(s)" and who paid NSC more for that service than allowed at the time by the Fair Credit Reporting Act.  Excluded from the Settlement Class are Class Counsel, the Judge to whom the Action is assigned and any member of the Judge's staff and immediate family, Class Counsel and all persons who validly request exclusion from the Settlement Class.

NSC has represented that there are approximately 57,273 Settlement Class Members.

**C.      The Consideration Provided to Settlement Class Members**

In connection with the proposed settlement, and in exchange for the releases discussed in more detail below, NSC has agreed to both non-monetary prospective relief for the benefit of the Settlement Class and other consumers and to establish a Settlement Fund to make cash payments to Settlement Class Members who paid NSC more than the then-applicable FCRA-mandated cap for consumer disclosures for the Self Verification Service.

1.      *Prospective Relief*

NSC has agreed not to assess a fee for the Self-Verification Service in excess of the cap stated at this time in section 1681j of the FCRA, $12.50, or as amended in the future.  Ex. A at § III.F.2.  In addition to this important practice change, NSC will provide one verification through the Self-Verification Service to each Settlement Class Member at no cost.  *Id*.  At $12.50 each, the value of the free verification provided to all 57,273 Settlement Class Members is $715,912.50.

2.      *The Settlement Fund*

In addition to the prospective relief that will provide substantial benefits to all Settlement Class Members and other consumers, NSC will establish a non-reversionary Settlement Fund in the total amount of $1,956,246.27.  *Id*. at §§ III.C-D.  NSC has represented that $337,081.80 is the difference between the amounts paid by Settlement Class Members during the Class Period and the $12 or $12.50 FCRA-mandated consumer disclosure caps, depending upon the applicable FCRA cap for each year.  *Id*.  These represent actual damages consumers may recover under the FCRA.  *See* 15 U.S.C. § 1681o.  The balance represents a negotiated damages enhancement based upon statutory damages available under the FCRA.  *See* 15 U.S.C. § 1681n.  All payments to Settlement Class Members will be paid out of the Settlement Fund, as well as any individual settlement and service award approved by the Court, and the award of attorneys' fees and expenses to Class Counsel.  *Id*. at § III.F.1.

a.      Class Member Payments

All members of the Settlement Class are eligible to receive a payment from the Settlement Fund and do not need to do anything to receive a payment.  All individuals in the Settlement Class whose notices are not returned as undeliverable and who do not submit valid Requests for Exclusion will receive an automatic payment.  *Id*. at § III.D.  Payments to Settlement Class Members will be calculated on a *pro rata* basis.  *Id*. at § III.F.1.

b.      Attorneys' Fees and Costs

The Settlement Agreement provides that for purposes of settlement, Plaintiff will request that the Court appoint National Consumer Law Center, Justice Catalyst Law, and Francis Mailman Soumilas, P.C. as Class Counsel.  *Id*. at § II.A.3.  Class Counsel will request that the Court approve an award of attorney's fees and costs of $750,000.  *Id*. at § III.H.  This figure amounts to 28% of

the total value created by the settlement, $2,672,158.77.[1]  NSC agrees not to object to or oppose Class Counsel's Fee Petition.  *Id*.  The Fee Petition will be filed at least 15 days prior to the deadline for class members to object to the Settlement.  *Id*.  Any requested attorneys' fees and expenses that are not awarded by the Court will be distributed to one or the other of the parties' proposed *cy pres* recipients.  *Id*. at § III.F.4.  Plaintiff proposes that the Court name Economic Mobility Pathways (EMPath) as *cy pres* recipient.  *See* Declaration of Persis Yu, attached hereto as Exhibit B ("Ex. B").  Defendant proposes that the Court name Peer Forward as *cy pres* recipient.  *See* Declaration of Lisa Simonetti, attached hereto as Exhibit C ("Ex. C").

> c.     Individual Settlement and Service Award to Plaintiff

The Settlement Agreement provides that Plaintiff will be appointed as Class Representative for purposes of settlement.  Ex. A at § III.A.  Plaintiff will request that the Court approve an individual settlement and service award in the amount of $7,500 in recognition of Plaintiff's service to the Settlement Class.  *Id*. at § III.I.  Class Counsel will submit this request at the same time as the Fee Petition, prior to the deadline for members of the Settlement Class to object to the Settlement.

> d.     Costs of Notice and Administration

NSC will pay all costs of notice and administration of the Settlement.  *Id*. at §§ II.A.24; III.D; III.E.1; III.F.1.  Subject to the Court's approval, Rust Consulting will act as the Settlement Administrator.  *Id*. at § II.A.20.  The Settlement Administrator will perform all tasks specified and assigned to it in the Settlement Agreement, including emailing notice, mailing any postcard notices required under the Settlement Agreement, setting up a settlement website and toll-free telephone number, receiving and processing Claim Forms, and providing regular reports to the parties and a

---

[1]     This figure is derived by adding the dollar amount of the Settlement Fund, $1,956,246.27, and the value of the free verifications, $715,912.50.

report to the Court prior to the Final Approval Hearing.  *Id*. §§ III.D; III.E.

e.      No Reverter

Under the terms of the Settlement Agreement, there is no reversion of any portion of the

Settlement Fund to NSC.  *Id*. at III.F.4. Uncashed checks will be paid to the *cy pres* recipient.  *Id*.

**D.      Releases**

Settlement Class Members who do not opt out will release claims (a) that arise out of or

are related in any way to the amount of charges assessed by NSC to any individual for providing

the Self-Verification Service[;]or (b) that arise out of or relate in any way to the administration of

the settlement.  *Id*. at §§ II.A.15-18; III.G.  Settlement Class Members also agree not to serve as a

class representative in a future suit asserting any of the Released Claims against the Released

Parties.  *Id*. at §§ III.B.2; II.A.16.

**E.      The Proposed Notice Plan**

The Settlement Agreement provides for a notice program in which the Settlement

Administrator will issue notices directly to Settlement Class Members to inform them of the

Settlement and their rights. *Id*. at § III.E. Members of the Class will receive notice by either

electronic mail or first-class mail using the most recent contact information available.  *Id*. at

§ III.E.1.

The primary form of notice for the Settlement will be via email, because NSC regularly

communicates with consumers via email.  *Id*.  The notices will be tailored for the Settlement Class

and Group.  *Id*. at § III.E.1-2; *see also* Email/Website Notice attached hereto as Exhibit D

("Ex. D"); Postcard Notice attached hereto as Exhibit E ("Ex. E").  For Class Members for whom

email notice is undeliverable, the Settlement Administrator shall send a postcard notice containing

the same information as the email notice after performing skip tracing at NSC's expense.  *Id*. at

§ III.E.1.

Additionally, the Settlement Administrator will establish and maintain a website devoted to providing information regarding the settlement. *Id*. at § III.E.2. The Settlement Website will contain information regarding the settlement, the rights of Class members, and a list of important deadlines. *Id.*; *see also* Ex. D.  The Settlement Agreement and a Website Notice will also be available on the website.  *Id*.  Plaintiff's Motion for Attorneys' Fees, Costs, and an Individual Settlement and Service Award will be available for Class members to download after it is filed. *Id*.  These materials will remain on the website until six months after the settlement's effective date.  *Id*.  The Settlement Website also will provide information for Settlement Class Members regarding how to request exclusion from the settlement.  *Id.*; *see also* Ex. D.

Finally, the Settlement Administrator will maintain a toll-free number that Settlement Class Members may call to receive more information regarding the settlement.  *Id*. at § III.E.3.  The E-Mail Notice and Mail Notice shall inform persons in the Settlement Class of the toll-free number. *See* Exs. D-E.

**F.     Opt-Out Rights**

Settlement Class Members may request exclusion from the settlement by sending a written request to the Settlement Administrator at the address designated in the Class Notice up until the Opt-Out and Objection Deadline. Ex. A at § III.J.  Exclusion requests must: (a) be signed by the person who requests exclusion; (b) include the full name and address of the person requesting exclusion; and (c) include the following statement: "I/we request to be excluded from the settlement in the Robinson action."  *Id*.  No request for exclusion will be valid unless all of the information described above is included.  *Id*.  No person in the Settlement Class, or any person acting on behalf of or in concert or participation with a person in the Settlement Class, may exclude any other person from the Settlement Class.  *Id*.  Settlement Class Members will have forty-five (45) days from the date the Settlement Administrator initially sends notice to request to be

excluded from the settlement.  *Id*. at § III.B.1.

**G.     Objections to the Settlement**

Any Settlement Class Member who has not opted out may submit a written objection to the Settlement Agreement.  *Id*. at § III.K.  Settlement Class Members will have forty-five days from the date of the initial notice mailing to object to the Settlement.  *Id*. at § III.B.1.  The objection must be in writing, identify the objector, explain the basis for the objection, and be submitted to Class Counsel, Defendant's Counsel, and the Clerk of the Court.  *Id*. at § III.K.2.  Settlement Class Members who object may be heard at the final approval hearing.  *Id*. at § III.K.1.

**H.     Deadlines Contemplated by the Settlement Agreement**

If the Court orders that notice be directed to the Settlement Class as requested herein, the following table sets out the deadlines proposed in the Settlement Agreement:

| EVENT | PROPOSED DEADLINE |
|---|---|
| Deadline for mailing Notice | 60 days following Order Directing Notice (the "Notice Deadline") |
| Fee Petition Due | 30 days following the Notice Deadline |
| Deadline to opt-out or object | 45 days following Notice Deadline (the "Opt-Out and Objection Deadline") |
| Settlement Administrator provides report on requests for exclusion/opt outs | 30 days following the Opt-Out and Objection Deadline |
| Brief in support of final approval of the settlement filed with the Court | 30 days following the Opt-Out and Objection Deadline |
| Final Approval Hearing | 60 days following Opt-Out and Objection Deadline |

## IV.     <u>ARGUMENT IN SUPPORT OF DIRECTING NOTICE TO THE CLASS</u>

FED. R. CIV. P. 23(e) governs a court's consideration of a proposed class action settlement, and states that grounds exist to give notice of a proposed class action settlement where the parties show that "the court will likely be able to (i) approve the proposal under Rule 23(e)(2); and

(ii) certify the class for purposes of judgment on the proposal." FED. R. CIV. P. 23(e)(1)(B). FED. R. CIV. P. 23(e) requires court approval of a class action settlement and the 2018 Amendments to Rule 23, effective Dec. 1, 2018, provide additional guidance to federal courts considering whether to grant preliminary approval of a class action settlement. *See* FED. R. CIV. P. 23(e), Committee Notes. "[I]n weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720-MK-BJO, 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (*citing* FED. R. CIV. P. 23(e)(1)(B)(i–ii)). Therefore, although the factors under Rule 23(e)(2) "apply to final approval, the Court looks to them to determine whether it will likely grant final approval based on the information currently before the Court." Those factors are as follows:

(A)     the class representatives and counsel have adequately represented the class;

(B)     the proposal was negotiated at arm's length;

(C)     the relief provided for the class is adequate, taking into account:

(i)      the costs, risks, and delay of trial and appeal;

(ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     the proposal treats class members equitably relative to each other.

*Id*. (*citing* FED. R. CIV. P. 23(e)); *accord Hays v. Eaton Grp. Attorneys, LLC*, No. CV 17-88-JWD-RLB, 2019 WL 427331, at *4 (M.D. La. Feb. 4, 2019). The fundamental principles governing a court's evaluation of whether a class action settlement is fair, reasonable, and adequate remain

undisturbed by the 2018 amendments: "The goal of this amendment is not to displace any factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."   FED. R. CIV. P. 23, Advisory Committee Note on 2018 Amendment to Subdivision (e)(2).   Consideration of these factors supports sending notice to the Settlement Class Members of the proposed settlement.

In addition, the public interest continues to "strongly favor[] the voluntary settlement of class actions," and consequently, a "presumption in favor of finding the settlement fair, reasonable and adequate" remains, when sufficient discovery has been provided and the parties have bargained at arms-length.   *Hays, supra* (recognizing same pro-settlement policy post-2018 amendments to Rule 23 and attendant presumption).

A. **The Court Will Likely Be Able to Approve the Settlement Agreement Because It Is Fair, Reasonable And Adequate**

The decision to order that notice be given of a proposed class action settlement was previously known as "preliminary approval" of a class action settlement.[2]   "The general rule is that a court will grant preliminary approval where the proposed settlement is neither illegal nor collusive and is within the range of possible approval."   William B. Rubenstein, et al., *Newberg on Class Actions* § 13:10 (5th ed. 2015).   The Court performs this analysis in the shadow of the "strong public policy in favor of settlements."   *Medoff v. CVS Caremark Corp.*, No. 09-cv-544, 2016 WL 632238, at *5 (D.R.I. Feb. 2, 2017).   A presumption of fairness attaches to a proposed settlement agreement "when the court finds that: (1) the negotiations occurred at arm's length;

---

[2]      This motion reflects amendments to FED. R. CIV. P. 23 which took effect on December 1, 2018.   The amendments clarified the requirements for court review and approval of class action settlements.   Among other changes, the concept of "preliminary approval" and an initial, conditional certification of the settlement class(es) was replaced with a finding that "giving notice is justified by the parties' showing that the court will likely be able" to give approval to the settlement and certify the settlement class(es) by the time of the final approval hearing.   FED. R. CIV. P. 23(e)(1)(B).

(2) was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D. Mass. 2004) (internal quotations and citations omitted)); *see also In re Colgate-Palmolive Softsoap*, 2017 WL 7282543 at *9; *Bezdek v. Vibram USA Inc.,* 79 F. Supp. 324, 343 (D. Mass. 2015) *aff'd*, 809 F.3d 78 (1st Cir. 2015) ("There is a presumption that a settlement is within the range of reasonableness when sufficient discovery has been provided and the parties have negotiated at arms' length. . . . This is the threshold requirement to survive at the preliminary review stage.") (internal quotations and citations omitted); and 4 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, §11.41 (4th ed. 2011); *Cf. Hochstadt v. Bos. Scientific Corp.*, 708 F. Supp. 2d at 108 (D. Mass. 2010) (evaluating the experience of counsel in preliminary approval process as a factor that contributes to the presumption of fairness). Here, these factors are met and directing notice to the Class is appropriate.

## B.      Plaintiff and Class Counsel Have Adequately Represented the Class

The adequacy determination under Rule 23(e)(2)(A) looks to whether the representative parties will "fairly and adequately protect the interests of the class" and whether class counsel is "'qualified, experienced and able to vigorously conduct the proposed litigation.'" *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47, 53 (D. Mass. 2013); *accord In re Payment Card Interchange Fee*, 2019 WL 359981, at *15 (considering adequacy requirement of newly amended Rule 23(e)(2) by looking to the interpretation of adequacy under Rule 23(a)); *see Amchem Products v. Windsor*, 521 U.S. 591 (1997) (courts examine whether representative's interests are antagonistic to or in conflict with those of the class members). Where, as here, the injuries suffered by the named Plaintiff are the same as those that the class is alleged to have suffered, the adequacy requirement is usually satisfied. *Duhaime v. John Hancock Mutual Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997).

Plaintiff Robinson has vigorously prosecuted this action on behalf of the Settlement Class Members by actively participating in this litigation, including by assisting his lawyers with gathering information and documents, by apprising himself of the bases for his legal claims, and by committing to represent the Class.  If Robinson had been unwilling to bring this matter and to prosecute it on behalf of other similarly situated, there would be no settlement benefits for Class Members at all.  There is no indication that Robinson has any conflict with any class member.

Furthermore, Robinson has retained highly experienced counsel with expertise in FCRA class action litigation, a factor which supports a finding of the adequacy of counsel.  *Lapan v. Dick's Sporting Goods, Inc.*, No. 1:13-CV-11390-R, 2015 WL 8664204, at *3 (D. Mass. Dec. 11, 2015).  The National Consumer Law Center, which publishes *Fair Credit Reporting*[3] as part of its 22-volume set of consumer law manuals, is well qualified to represent consumer classes.  Its lawyers have been involved in over 100 consumer class action cases, including many in this District.[4]  Francis Mailman Soumilas, P.C. has been found to be well-qualified to represent consumer classes on over sixty occasions, including on contest and over objection by competing counsel.[5]  Justice Catalyst Law, a nonprofit law firm, has several currently ongoing class actions

---

[3]   NATIONAL CONSUMER LAW CENTER, *Fair Credit Reporting* (9th ed. 2017), *updated at* www.nclc.org/library.

[4]   *See, e.g.*, *Morkavage v. Morgan Stanley Dean Witter*, No. 99-40114 (D. Mass); *Pettway v. Harmon Law Offices, P.C.*, No. 03-10932-RCL (D. Mass.); *Mogel v. Unum Life Ins. Co. of Am.*, No. 07-CA-10955 (D. Mass.); *Puello v. Citifinancial/Citigroup*, No. 08-10417 (D. Mass.); *Barrett v. Option One/ H& R Block Bank*, No. 08-10157 (D. Mass.); *Blake v. Riddle & Wood, P.C.*, No. 08-12033 (D. Mass.); *Rodriguez v. Chase Bank USA, N.A.*, No. 1:09-CV-10614 (D. Mass.); *Vander Luitgaren v. Sun Life Assurance Co., et al.*, No. 09-CV-11410 (D. Mass.); *Bosque v. Wells Fargo Bank, N.A.*, No. 10-10311 (D. Mass.); *Johnson v. BAC Home Loans Servicing, LP*, No. 10-10316 (D. Mass.); *Durmic v. J.P. Morgan Chase Bank, N.A.*, No. 10-10380 (D. Mass.); *Belyea v. Litton Loan Servicing, LLP*, No. 1:10-cv-10931 (D. Mass.); *Otte v. Life Ins. Co. of N. Am.*, No. 09 CV 11537 (D. Mass.).

[5]   *See Kelly v. Bus. Info. Group, Inc.*, No. 15-6668, 2019 WL 414915, *7 (E.D. Pa. Feb. 2, 2019) (Francis Mailman Soumilas "have substantial experience in class action and FCRA consumer litigation and … are qualified to conduct the litigation").  Francis Mailman Soumilas recently obtained a jury verdict in a FCRA class action in excess of $60 million.  *Ramirez v. Trans Union, LLC*, No. 3:12-cv-632 (N.D. Cal.) (ECF 309), motion for new trial denied, 2017 WL 5153280 (N.D. Cal. Nov. 7, 2017).  *See also Patel v. Trans Union, LLC*, 308 F.R.D. 292, 307 (N.D. Cal. 2015) (noting counsel have "extensive experience in litigating [FCRA cases]…have represented consumer classes in many cases in many districts…[and] have shown their proficiency in this case…"); *White v. Experian Info. Solutions*,

and its counsel worked extensively on FCRA issues at the Consumer Financial Protection Bureau, the federal agency tasked with administering the FCRA.  No firm has any conflict with members of the Settlement Class.

Accordingly, Plaintiff and Class Counsel have and will continue to adequately represent the Settlement Class.

1.    *The Settlement Agreement Is the Result of Engaged, Arms-Length Negotiations Overseen by an Experienced Mediator*

Rule 23(e)(2)(B) instructs the court to consider whether the proposed settlement was negotiated at arm's length.  There is typically an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations between experienced, capable counsel after meaningful exchange of information relevant to settlement.  *See, e.g.*, *In re Payment Card Interchange Fee*, 2019 WL 359981, at *19; *Bezdek*, 79 F. Supp. 3d at 343 ("There is a presumption that a settlement is within the range of reasonableness when sufficient discovery has been provided and the parties have bargained at arms-length.").  Such a presumption is appropriate here.

The Settlement Agreement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual issues of this case.  Plaintiff's counsel are particularly experienced in the litigation, certification, and settlement of FCRA cases similar to this case. In negotiating the Settlement Agreement,

---

993 F. Supp. 2d 1154, 1169, 1172 (C.D. Cal. 2014) (finding Francis Mailman Soumilas "FCRA specialists" and appointing firm and its team as interim class counsel over objections from competing group because their team's "credentials and experience [we]re significantly stronger in class action and FCRA litigation."), *aff'd sub nom. Radcliffe v. Experian Info. Solutions, Inc.*, 818 F.3d 537, 548 (9th Cir. 2016); *Sapp v. Experian Info. Solutions*, No. 10-4312, 2013 WL 2130956 (E.D. Pa. May 15, 2013); *LaRocque v. TRS Recovery Services, Inc.*, 285 F.R.D. 139 (D. Me. 2012) (certifying Francis Mailman Soumilas as class counsel in consumer class action); *Giddiens v. LexisNexis Risk Solutions, Inc.*, No. 2:12-cv-2624 (ECF 55, ¶ C) (E.D. Pa. Jan. 20, 2015) (order granting final approval and certifying Francis Mailman Soumilas as class counsel).

counsel also had the benefit of years of experience litigating class actions and a familiarity with the facts of this case.  Moreover, the parties engaged in an extensive and contested mediation before an experienced mediator, retired Magistrate Judge Diane Welsh.  Prior to their sessions, the parties prepared memoranda and exchanged information relevant to settlement, which was reached only after both Class Counsel and Defendant's Counsel were fully informed of the facts, and following extensive adversarial negotiations.  This factor also therefore supports a finding that notice should be sent to members of the proposed Settlement Class.

2.      *The Settlement Provides Substantial Relief for Settlement Class Members*

The proposed Settlement provides substantial benefits to all Settlement Class Members, including important changes to NSC's practices which will help to prevent a repetition of the conduct alleged in the Complaint.  In addition to changing how much it charges consumers for the Verification Service, NSC has agreed to make cash payments to Settlement Class Members that significantly exceed the amount of overcharge incurred by Settlement Class Members.

The benefits provided in the Settlement are fair and reasonable in light of the risks of continued litigation and the financial condition of the Defendant, and the method of distribution of the proposed Settlement Fund is effective in light of the available data regarding class members.[6]

3.      *The Settlement Agreement Is a Preferable Alternative to the Risks Each Party Would Face Through Continued Litigation*

The Settlement provides all of the significant benefits described above to Settlement Class Members without the risks, costs, and delays inherent in continued litigation, trial, and appeal. The expense, complexity, and duration of litigation are important factors considered in evaluating the reasonableness of a settlement.  *See, e.g., Bacchi v. Massachusetts Mut. Life Ins. Co.*, No. 12-

---

[6]      The final consideration set forth in the amended Rule 23(e)(2)(C) – the existence of any side agreements made in connection with the settlement – is not applicable here because no such agreements exist.

11280-DJC, 2017 WL 5177610, at * 2 (D. Mass. Nov. 8, 2017); *Roberts v. TJX Cos., Inc.*, No. 13-cv-13142-ADB, 2016 WL 8677312, at * 6-7 (D. Mass. Sept. 30, 2016).

Plaintiff is confident that if the case were to continue to litigate, he would be successful in certifying the proposed Settlement Class on contest.  Plaintiff anticipates, however, that NSC would raise substantive opposition to the certification of any class, including through the vehicle of appellate review pursuant to FED. R. CIV. P. 23(f).

Even if Plaintiff succeeded in certifying one or more classes, he would still face the task of proving liability on the merits of his claims, including the risks associated with a possible motion for summary judgment, and the even greater risks, uncertainty, delay, and expense of trial.  Even if Plaintiff succeeded in passing the liability hurdle, the parties would continue to battle over whether Plaintiff and other class members have sustained damages, and if so, the proper measure of those damages.  The battles would be fought not only before and at trial, but also on appeal.  By contrast, the proposed Settlement provides significant prospective and monetary benefits to the Settlement Class without the risks set out above.

The amount of the Class Member Payments under the settlement cannot be determined with precision until the claims period is complete and the total number of class members receiving such payments can be calculated.  However, assuming that each Settlement Class Member can be located and none excludes himself or herself, Class Member Payments would be approximately $21 in cash,[7] plus an additional $12.50 in the value of the free verification.  This total amount is more than fivefold the average amount each Settlement Class Member was actually overcharged, namely $5.89.  Class Member Payments will thus be in line with other court-approved FCRA

---

[7]     This calculation assumes that the Court will approve in full the requested attorneys' fees and costs and individual settlement and service award for Plaintiff.  This would leave $1,198,746.27 in the Settlement Fund for distribution to Settlement Class Members.

settlements.[8]

    4.    *The Proposed Award of Attorney's Fees Is Fair and Reasonable*

If the Court orders that notice be directed to the Settlement Class, Plaintiff's counsel will

request that the Court award them attorneys' fees and costs in the amount of $750,000, which is

28% of the total value created by the settlement.  Ex. A at § III.H.  Plaintiff's Counsel has

negotiated a settlement that establishes a common fund to benefit all Settlement Class Members.

*See* Ex. A at § II.C.  This amount – negotiated only after the substantive terms of the settlement

were agreed upon – is supported by the percentage-of-the-fund method that First Circuit courts use

to determine fees and costs in common fund class action cases.

The First Circuit recognizes two methods for calculating attorneys' fees in the class action

context involving a common fund, the "percentage of the fund" ("POF") method, or the lodestar

method.  *See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56

F.3d 295, 307 (1st Cir. 1995).  The POF "method functions exactly as the name implies: the court

shapes the counsel fee based on what it determines is a reasonable percentage of the fund recovered

for those benefitted by the litigation." *Id*. at 305.  The POF method is preferred in common fund

cases.  *See In re Cabletron Systems, Inc. Securities Litigation*, 239 F.R.D. 30, 37 (D.N.H. 2006)

---

[8]    *See, e.g., Patel v. Trans Union, LLC*, No. 14-cv-00522-LB, 2018 WL 1258194, at *2-3 (N.D. Cal. Mar. 11, 2018) (automatic payment of $400.00 to each class member, with the right to submit a claim for an additional payment); *Flores v. Express Services, Inc.*, No. 14-3298, 2017 WL 1177098, at *1 (E.D. Pa. Mar. 30, 2017) (approval of FCRA settlement with $50 automatic payment to 32,000 member class, with option to seek additional payment from damages fund); *Carter v. Shalhoub Mgmt. Co., Inc.*, No. EDCV-15-01531-MWF-(JCx), 2017 WL 5634300 (C.D. Cal. Mar. 15, 2017) (automatic payment of $276 to each class member); *Patrick v. Interstate Mgmt. Co., LLC*, No. 15-cv-1252 (ECF 49) (M.D. Fla. Apr. 29, 2016) (approving settlement of FCRA disclosure claim where class members received $9 each); *King v. Gen'l Info. Serv's, Inc.*, C.A. No. 10-6850 (ECF 125) (E.D. Pa. Nov. 14, 2014) (challenging practice of reporting outdated adverse non-conviction records; class members paid $49.68 each); *Robinson v. Gen'l Info. Serv's, Inc.*, C.A. No. 11-7782 (ECF 55) (E.D. Pa. Nov. 4, 2014) (challenging practice of failing to notify consumers that consumer reporting agency was reporting to prospective employers; class members paid $49 each); *Marcum v. Dolgencorp, Inc.*, No. 12-cv-108 (ECF 78) (E.D. Va. Oct. 16, 2014) (approving settlement that pays inadequate disclosure class members $53 each); *Simons v. Aegis Comm's Group*, No. 2:14-cv-04012 (ECF 29) (W.D. Mo. Oct. 15, 2014) (approving improper disclosure settlement with payment of $35 per class member).

(citations omitted).  Under the POF method, "the court shapes the counsel fee based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation." *Thirteen Appeals*, 56 F.3d at 305.

Here, an attorney's fees and costs award of 28% of the value of the settlement is within the range in which courts in the First Circuit award fees.  *Bezdek*, 79 F. Supp. 3d at 349-350 (noting a range of 20–30%, with 25% as the benchmark).

Prior to final approval, Plaintiff's Counsel will file a separate motion for award of attorneys' fees and costs, addressing in detail the facts and law supporting their fee request. Counsel will file this motion 15 days before the deadline to object to the settlement to provide Settlement Class Members with sufficient time to review the fee request.  However, a review of the factors for approving fees indicates that Plaintiff's counsel's contemplated request is well within the range of reasonableness, demonstrating that it is appropriate to direct notice to the Settlement Class.

5.      *The Method of Providing Relief Will Be Effective*

The relief provided for in the Settlement Agreement will be distributed through prospective relief and through cash payments from the Settlement Fund.  Each of these methods will effectively address the experiences of the Settlement Class Members, as alleged in the Complaint.

First, all Settlement Class Members will benefit from the implementation of the practice changes provided by the prospective relief provision of the Settlement Agreement.

Second, the Settlement Agreement establishes a process for distributing Class Member Payments to Settlement Class Members who paid NSC more than the applicable FCRA-mandated cap for the Self-Verification Service.  The distribution process guarantees that Settlement Class Members, who have already been identified by NSC, will receive a Class Member Payment without having to take any additional action.  Ex. A at §§ III.D, III.F.1.

17

6.      *The Settlement Treats All Settlement Class Members Fairly*

The Settlement Agreement treats Settlement Class Members fairly.  It identifies class members based upon the transactions that Robinson had with NSC, and the claims that he brought in the lawsuit as a result.

First, Robinson purchased Self-Verification Service sought from NSC and was charged more than the then-applicable FCRA-mandated consumer disclosure cap.  Although NSC denies any violation of the law, Robinson claimed that this was a violation of FCRA section 1681j.  NSC investigation has revealed 57,248 other consumers who purchased the Self-Verification Service from NSC within the statute of limitations period and whom NSC charged more than the applicable cap.  All of these individuals will also receive a free verification through the Self-Verification Service from NSC.  Ex. A at § III.F.2.  Moreover, they will also receive approximately $21.[9]  *Id.* at § III.F.1.  NSC will also change how much it charges consumers for the Self-Verification Service, bringing them in line with the FCRA cap.  *Id.* at § III.F.2.

In sum, all Settlement Class Members will receive a cash payment in an equal amount and will benefit from a free verification report from NSC.  Furthermore, everyone who uses NSC's Self-Verification Service in the future will never pay more than the then-applicable FCRA consumer disclosure cap.  Finally, the Settlement Fund is non-reversionary.  Any funds remaining in the Fund after distribution of Class Member Payments will be donated as *cy pres* monies as approved and directed by the Court.  *Id.* at § III.F.4.  This arrangement treats all class members fairly.

---

[9]      In his complaint, Robinson sought to represent a subclass of Massachusetts consumers on the theory that under that NSC had overcharged Massachusetts residents in violation of the MCRA, which provides that a consumer reporting agency may only charge $8 for a consumer disclosure.  *See* MASS. GEN. LAWS ch. 93 § 59(c).  The parties' settlement, which provides monetary relief to all Settlement Class Members in excess of what the average Massachusetts subclass member was actually overcharged obviates the need for treating the Massachusetts subclass differently.

**C.     The Court Will Likely Be Able to Certify The Settlement Class for the Limited Purpose of Settlement**

Sending notice of the terms of the proposed Settlement is also justified because the Court will likely be able to certify the proposed Settlement Class for purposes of judgment on the proposal.  FED. R. CIV. P. 23(e)(1)(B)(ii).  In the Settlement Agreement, the parties agree that the Court should certify the Settlement Class for settlement purposes only.  *Id.* at § III.A.   For the reasons set forth below, the Settlement Class meet the requirements for certification under Rule 23(a) and (b)(3).

The numerosity requirement of Rule 23(a) is satisfied.  Class members minimally number in the tens of thousands.  Joinder of all such persons is impracticable.  *See* FED. R. CIV. P. 23(a)(1); *see also Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 138 (D. Mass. 1988) (800 to 900 member class made joinder impracticable).  Indeed, "[no] minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009).

The commonality requirement is satisfied because the proposed class members "have suffered the same injury."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350; 131 S. Ct. 2541, 2551 (2011).  In other words, commonality requires that the claims of the class "depend upon a common contention…of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.*  Even so, "commonality is a low hurdle."  *Southern States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 87 (D. Mass. 2007).  Here, many common questions of law and fact exist, but in particular, commonality is satisfied by the following question: whether NSC charged members of the Settlement Class more for its Self-

Verification Service than would apply to consumer file disclosures under the FCRA.  *See* FED. R. CIV. P. 23(a)(2); *Duhaime*, 177 F.R.D. at 63 (each class member treated in similar manner).

The typicality requirement of Rule 23(a)(3) is satisfied because the same conduct applied to Robinson also was applied to other class members.  *See Barry v. Moran,* No. 05-10528-RCL, 2008 WL 7526753, at *11 (D. Mass. Apr. 7, 2008).  Specifically, Plaintiff alleged that NSC charged consumers more than the applicable FCRA-mandated cap for consumer disclosures for the Self-Verification Service.

As set forth above, Plaintiff and Class Counsel have satisfied the adequacy requirement of Rule 23(a)(4).

The predominance requirement of Rule 23(b)(3) is satisfied because the common questions present a significant aspect of the case and can be resolved for all members of each Settlement Class in a single adjudication.  *See* FED. R. CIV. P. 23(b)(3); *Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (predominance requirement satisfied by "sufficient constellation of common issues [that] bind class members together" and "cannot be reduced to a mechanical, single-issue test"); *Duhaime*, 177 F.R.D. at 64 (D. Mass. 1997) (requirement is "readily met in cases alleging consumer . . . fraud" where claim alleges single course of conduct) (*quoting Amchem*, 521 U.S. at 625).  The predominance element has been met here because the claims of the Settlement Class Members and the circumstances under which these claims arise are substantially the same.

Rule 23(b)(3) contains four factors a court must analyze in determining whether a class action is superior to individual litigation.  These are whether individuals have a strong interest in controlling potentially separate actions; a class action's effect on competing litigation involving members of the class; whether resolution of the case in a single forum is desirable; and the potential

difficulties that management of a class action presents.  FED. R. CIV. P. 23(b)(3).  A class action is

the superior method of resolving large scale claims if it will "achieve economies of time, effort,

and expense, and promote . . . uniformity of decision as to persons similarly situated, without

sacrificing procedural fairness or bringing about other undesirable results."  *Amchem*, 521 U.S. at

615.  One reason that a class action is the superior method of proceeding in a case of this type is

that it allows the plaintiffs "to pool claims which would be uneconomical to litigate individually."

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985).  Here, because each Settlement Class

Member's claim is relatively insignificant, it is uneconomic for individuals to pursue these claims

on their own, and therefore unlikely they will do so.  *See Grace v. Perception Technology, Inc.*,

128 F.R.D. 165, 171 (D. Mass. 1989); *Randle v. SpecTran*, 129 F.R.D. 386, 393 (D. Mass. 1988).

Finally, any possible difficulties of managing a class action are vitiated by the fact of this

Settlement Agreement.  When "confronted with a request for settlement-only class certification, a

district court need not inquire whether the case, if tried, would present intractable management

problems . . . for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620.  For these

reasons, it is likely that the Settlement Class will be certified for settlement purposes upon final

approval.

**D.      The Proposed Notice Program Is Constitutionally Sound**

Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class

members who would be bound by" a proposed settlement, voluntary dismissal, or compromise.

Class members are entitled to the "best notice that is practicable under the circumstances" of any

proposed settlement before it is finally approved by the Court.  FED. R. CIV. P. 23(c)(2)(B).  The

amendments to Rule 23(c)(2)(B) provide that "notice may be by one or more of the following:

United States mail, electronic means, or other appropriate means." To comply with due process,

notice must be "the best notice practicable under the circumstances, including individual notice to

all members who can be identified through reasonable effort." *Amchem*, 521 U.S. at 617.  The

notice must state in plain, easily understood language: (i) the nature of the action; (ii) the definition

of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter

an appearance through an attorney if the member so desires; (v) that the court will exclude from

the class any member who requests exclusion; (vi) the time and manner for requesting exclusion;

and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).  FED. R. CIV.

P. 23(c)(2)(B).

     The proposed notice plan complies with these requirements.  It provides for individual

notice to be sent to each Settlement Class Member identified in NSC's business records.  Email

notice is appropriate because NSC regularly obtains email addresses in connection with the Self-

Verification Service, and frequently provides the services via email.  The notice program also

provides for individual notice via U.S. Mail for any class member for whom NSC does not possess

an email address, or whose email notice is undeliverable.

     The language of the proposed notices is plain and easily understood, providing neutral and

objective information about the nature of the settlement.  The notice includes the definition of the

Class, a statement of each Class Member's rights (including the right to opt-out of the Settlement

Class or object to the settlement, and the time to do so), a statement of the consequences of

remaining in the Settlement Class, an explanation of how members can exclude themselves from

the respective Class or object to the settlement, and methods for obtaining more information,

including directions to log on to a dedicated Settlement Website.  Ex. A at § III.E.1-2; Exs D-E.

The Website Notice explains how class members may enter an appearance through an attorney in

connection with an objection.  Ex. D.

Plaintiff submits that the notice program outlined in the Settlement Agreement is the best practicable notice under the circumstances of this case and will be highly effective.

## E.      Scheduling a Final Approval Hearing Is Appropriate

After notice is given to Settlement Class Members of the terms of the proposed settlement and they have an opportunity to object, opt out, and make claims, the final step in the settlement approval process is a Final Approval Hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation.  Proponents of the Settlement Agreement may explain the terms and conditions of the Settlement Agreement and offer argument in support of final approval.   The Court will determine after the Final Approval Hearing whether the Settlement Agreement should be approved, and whether to enter a final order and judgment under Rule 23(e).  Plaintiff requests that the Court set a date for a hearing on final approval at the Court's convenience, but no earlier than 120 days after an order directing notices to the Settlement Class is entered.

## V.      CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court grant the instant Motion and enter the proposed order filed herewith.

DATED:   January 3, 2020                              Respectfully submitted,

**JAMES ROBINSON**, *by his attorneys*,

*/s/ Stuart T. Rossman*
Stuart T. Rossman, B.B.O. No. 430640
Joanna Darcus, B.B.O. No. 601146
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th Floor
Boston, MA 02110
Tel: (617) 542-8010
srossman@nclc.org
jdarcus@nclc.org

Benjamin David Elga*
Brian James Shearer*
JUSTICE CATALYST LAW
81 Prospect Street
Brooklyn, NY 11201
518-732-6703
belga@justicecatalyst.org
brianshearer@justicecatalyst.org

James A. Francis*
John Soumilas*
Jordan M. Sartell*
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
jsartell@consumerlawfirm.com

*admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on January 3, 2020, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Stuart T. Rossman
Stuart T. Rossman