# Exhibit A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is made by and between plaintiff James Robinson ("Robinson") for himself and the Settlement Class (as defined below), on the one hand, and National Student Clearinghouse ("NSC"), for itself and the Released Parties (as defined below), on the other hand.  NSC, Class Counsel (as defined below) and Robinson hereby stipulate and agree that, in consideration of the promises and covenants set forth in this Agreement and upon entry by the Court (as defined below) of a Final Approval Order (as defined below), all claims of Robinson and the Settlement Class Members (as defined below) in the action entitled James Robinson v. National Student Clearinghouse, United States District Court, District of Massachusetts (the "Court"), Case No. 1:19-cv-10749-FDS (the "Action"), shall be settled, compromised and released upon the terms and conditions contained herein.

## I.    RECITALS

This Agreement is made with reference to and in contemplation of the following facts and circumstances:

A.    The Action was filed on April 18, 2019.  Robinson alleges that NSC violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, the Massachusetts Credit Reporting Act ("MCRA"), Mass. Gen. Laws ch. 93 §§ 50-67, and the Massachusetts Consumer Protection Act ("MCPA"), Mass Gen. Laws ch. 93A §§ 1-11, for charging allegedly excessive amounts for reports made to verify consumers' information regarding their post-secondary education, at their request (the "Self-Verification Service").  Specifically, with respect to the Self-Verification Service, Robinson alleges that NSC charged amounts in excess of caps that the FCRA and the MCRA impose on consumer reporting agencies when providing file disclosures to consumers.

B.    Robinson believes that the claims asserted in the Action are valid, including that NSC is a consumer reporting agency that provided file disclosures above the FCRA and MCRA caps.

C.      NSC vigorously denies all claims asserted in the Action and denies all allegations of wrongdoing and liability, and further denies that it is a consumer reporting agency and that the FCRA or MCRA apply to it or its business practices, including the Self-Verification Service.  This settlement in no event is to be construed or deemed to be evidence of or an admission or concession on the part of NSC that the FCRA or MCRA apply, that it is a consumer reporting agency, that there is any infirmity in the defenses that it has asserted or would have asserted or that there is any merit whatsoever to any of the allegations that Robinson asserts.  NSC desires to settle the Action on the terms set forth herein solely for the purpose of avoiding the burden, expense, risk and uncertainty of continuing these proceedings.

D.      This Agreement resulted from and is the product of extensive, good faith and arm's length negotiations.  The Parties (as defined below) participated in mediation before the Honorable Diane Welsh (Ret.) of JAMS on August 9, 2019 to reach a resolution of the Action.

E.      Robinson and Class Counsel have investigated the facts and law underlying the claims asserted in the Action, including through an exchange of information.

F.      As a result of these efforts, the Parties entered into this Agreement, subject to court approval, as required by Rule 23 of the Federal Rules of Civil Procedure, to fully, finally and forever resolve, discharge and release all rights and claims held by Robinson and the Settlement Class Members.

G.      Based on the investigation and the negotiations described above, Class Counsel have concluded, taking into account the sharply contested issues involved, the risks, uncertainty and cost of further prosecution of this Action, and the substantial benefits to be received by persons in the Settlement Class pursuant to this Agreement, that a settlement with NSC on the terms set forth herein is fair, reasonable, adequate and in the best interests of the Settlement Class.

H.      The Parties understand, acknowledge and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims.  This Agreement is inadmissible as evidence against any party except to enforce the terms of the settlement and is not an admission of wrongdoing or liability by NSC.  It is the Parties' desire and intention to effect a

full, complete and final settlement and resolution of all existing disputes and claims as set forth herein.

**NOW, THEREFORE,** in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, Robinson and NSC agree to the settlement, subject to approval by the Court, as follows:

## II.    **DEFINITIONS**

A.    In addition to the terms defined elsewhere within this Agreement, the following defined terms apply throughout this Agreement and the attached exhibits:

1.    "Account" means the account to be established consistent with the terms and conditions described in Section III.C. of this Agreement.  The Account shall be held at a bank to be selected by Class Counsel and NSC, in conjunction with the Settlement Administrator.

2.    "CAFA Notice" refers to the notice requirements imposed by 28 U.S.C. § 1715(b).

3.    "Class Counsel" means National Consumer Law Center, Justice Catalyst Law and Francis Mailman Soumilas, P.C.

4.    "Class Notice" means the E-Mail Notice, Mail Notice and Website Notice that will be provided to the Settlement Class, pursuant to Section III.E. of this Agreement.

5.    "Class Period" means the period from April 18, 2014 through August 9, 2019.

6.    "*Cy Pres* Distribution" means monies that may be distributed in connection with the settlement, pursuant to Section III.F.4. of this Agreement.

7.    "Effective Date" means the fifth business day after the last of the following dates:

a.    All Parties, NSC's Counsel and Class Counsel have executed this Agreement;

b.    The Court has entered, without material change, the Final Approval Order; and

3

      c.      The final disposition of any related appeals, and in the case of no appeal or review being filed, expiration of the applicable appellate period.

8.      "E-Mail Notice" means the notice that will be provided pursuant to Section III.E.1. of this Agreement, subject to approval by the Court, substantially in the form attached hereto as Exhibit A.

9.      "Final Approval Hearing" means the date of the hearing when the Court considers the Parties' request to enter the Final Approval Order granting final approval to the settlement and determining the amount of fees, costs and expenses awarded to Class Counsel and the amount of the Service Award to Robinson.

10.      "Final Approval Order" or "Final Approval" means the order and judgment that the Court enters upon finally approving the settlement in connection with the Final Approval Hearing, the proposed form of which is attached hereto as Exhibit B.

11.      "Mail Notice" means the postcard notice that will be provided pursuant to Section III.E.1. of this Agreement, subject to approval by the Court, substantially in the form attached hereto as Exhibit C.

12.      "The Notice Order" means the order that the Court enters directing notice to the Class, the proposed form of which is attached hereto as Exhibit D.

13.      "NSC's Counsel" means Greenberg Traurig, LLP.

14.      "Parties" means Robinson and NSC.

15.      "Released Claim" or "Released Claims" means all rights, duties, obligations, claims, actions, causes of action or liabilities, whether arising under local, state or federal law, whether by Constitution, statute, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, liquidated or unliquidated, punitive or compensatory as of the date of the Final Approval Order:  (a) that arise out of or are related in any way to the amount of

charges assessed by NSC to any individual for providing the Self-Verification Service -- i.e., providing Degree Verification or Dates of Attendance for the indicated purpose of "Verifying my own Record(s)"; or (b) that arise out of or relate in any way to the administration of the settlement.

16.     "Released Parties" means NSC and all companies to which it is related, together with all of their respective members, owners, shareholders, predecessors, successors and assigns; the past, present, and future, direct and indirect, parents (including, but not limited to holding companies) and subsidiaries of any of the above; and the past, present and future principals, trustees, partners, insurers, officers, directors, employees, agents, vendors, independent contractors, advisors, attorneys, members, owners, shareholders, predecessors, successors, assigns, representatives, heirs, executors and administrators of any of the above.

17.     "Releases" means all of the releases contained in Section III.G. of this Agreement.

18.     "Releasing Parties" means Robinson and each and all Settlement Class Members, on behalf of themselves and their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest and assigns, as set forth in Section III.G. of this Agreement.

19.     "Service Award" means an incentive award for Robinson, as set forth in Section III.I. of this Agreement.

20.     "Settlement Administrator" means Rust Consulting, subject to approval by the Court.

21.     "Settlement Award" means a cash payment to a Settlement Class Member pursuant to Section III.F.1. of this Agreement.

22.     "Settlement Class" means those individuals who, during the Class Period, ordered a Degree Verification or Dates of Attendance service from NSC for the indicated purpose of "Verifying my own Record(s)" and who paid NSC more for that service than allowed at the time by the Fair Credit Reporting Act.  Excluded from the Settlement Class are Class Counsel, the Judge to whom the Action is assigned and any member of the Judge's staff and immediate family,

and all persons who validly request exclusion from the Settlement Class.  NSC represents that there are approximately 57,273 persons in the Settlement Class.

23.     "Settlement Class Member" means any person in the Settlement Class who does not request exclusion from the settlement.

24.     "Settlement Costs" means (a) all costs of printing and providing notice to persons in the Settlement Class (including, but not limited to, costs for performing National Change of Address updates, E-Mail Notice, Mail Notice and Website Notice); (b) all costs of administering the settlement, including, but not limited to, the cost of printing and mailing Settlement Awards; and (c) the fees, expenses and all other costs of the Settlement Administrator.

25.     "Website Notice" means the E-Mail Notice provided pursuant to Section III.E.1. of this Agreement, in the form attached hereto as Exhibit A, but which also will be posted on the "Settlement Website," to be established by the Settlement Administrator. The E-Mail Notice, Mail Notice and the Website Notice, collectively, shall be the "Notice Program."

B.     Capitalized terms used in this Agreement but not defined above shall have the meaning ascribed to them in this Agreement, including the attached exhibits.

## III.   <u>TERMS OF SETTLEMENT</u>

A.     <u>Conditional Certification of the Settlement Class</u>.  Solely for the purposes of settlement, providing Class Notice and implementing this Agreement, the Parties agree to conditional certification of the Settlement Class in the Action for settlement purposes only.  If the settlement is not finalized or finally approved by the Court for any reason whatsoever, the certification of the Settlement Class is voidable by any party, and no doctrine of waiver, estoppel or preclusion will be asserted in any litigated certification proceedings in the Action.  No agreements, documents or statements made by or entered into by any party in connection with the settlement may be used by Robinson, any person in the proposed Settlement Class, NSC or any other person to establish liability, any defense and/or any of the elements of class certification, whether in the Action or in any other proceeding.

B.     <u>Motion Directing Notice to the Class</u>.

1.      <u>Motion Directing Notice to the Class.</u>  Robinson will move the Court for entry of an Order directing notice to the class.   The Notice Order shall specifically include provisions that:  (a) preliminarily approve the settlement reflected herein as fair, adequate and reasonable to the Settlement Class, and within the reasonable range of possible final approval; (b) conditionally certify the Settlement Class for settlement purposes only and appoint Class Counsel as counsel for the Settlement Class for settlement purposes only; (c) approve the forms of Class Notice and find that the Notice Program constitutes the best notice practicable under the circumstances, provides due and sufficient notice to the Settlement Class and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23; (d) direct that notice be provided to the Settlement Class, in accordance with this Agreement, within 60 days following entry of the Notice  Order (the "Notice Deadline"); (e) establish a procedure for persons in the Settlement Class to object to the settlement or exclude themselves from the Settlement Class, and set a date 45 days after the Notice Deadline, after which no one shall be allowed to object to the settlement or exclude himself or herself from the Settlement Class (the "Opt-Out and Objection Deadline"); (f) pending final determination of whether the settlement should be approved, bar and enjoin, in accordance with applicable law, persons in the Settlement Class, directly, on a representative basis or in any other capacity, from commencing or prosecuting against any of the Released Parties any action, arbitration or proceeding in any court, arbitration forum or tribunal asserting any of the Released Claims; (g) pending final determination of whether the settlement should be approved, stay all proceedings in the Action except those related to effectuation of the settlement; and (h) schedule a hearing on Final Approval of the settlement, which shall be scheduled no earlier than 60 days after the Opt-Out and Objection Deadline.

2.      <u>Stay/Bar of Proceedings</u>.  All proceedings in the Action will be stayed following entry of the Notice Order, except as may be necessary to implement the settlement or comply with the terms of the settlement.  Pending determination of whether the settlement should be granted Final Approval, the Parties in the Action agree not to pursue any claims or defenses otherwise available to them, and no person in the Settlement Class and no person acting or

7

purporting to act directly or derivatively on behalf of a person in the Settlement Class, or acting on a representative basis or in any other capacity on behalf of a person in the Settlement Class, will commence or prosecute against any of the Released Parties any action or proceeding asserting any of the Released Claims.  The Notice Order will contain an injunction, in accordance with applicable law, enjoining the commencement or prosecution of the Released Claims by Settlement Class Members.  The settlement will be conditioned upon the entry of such an injunction in both the Notice Order and the Final Approval Order.

C.    The Account.  NSC shall deposit the amount of $1,956,246.27 [One Million Nine Hundred Fifty-Six Thousand Two Hundred Forty-Six Dollars and Twenty-Seven Cents] (the "Fund") into the Account within fourteen (14) days of the Effective Date.  NSC represents that $337,081.80 is the total difference between the amounts paid by Settlement Class during the Class Period and the $12 or $12.50 FCRA caps (depending upon the applicable FCRA cap for each year).

D.    Settlement Administrator.  The Settlement Administrator shall administer the Notice Program and Settlement Award distribution process.  NSC will reasonably cooperate in the notice and administration process by providing the Settlement Administrator, on a confidential basis and within 30 days of the entry of the Notice Order, with the names and addresses associated with the Settlement Class (as reflected in reasonably available computerized records of NSC).  NSC will pay all Settlement Costs incurred by the Settlement Administrator.

E.    Notice Program.  The Settlement Administrator, as specified below, shall provide Class Notice in the forms approved by the Court, as detailed below, within 60 days following entry of the Notice Order (i.e., the Notice Deadline, as defined):

1.    E-Mail and Mail Notice.  The Settlement Administrator will provide the E-Mail Notice to all persons in the Settlement Class.  For E-Mail Notice that is undeliverable, the Settlement Administrator will perform a National Change of Address update before mailing the Mail Notice.  Skip tracing shall be performed for all returned direct mail, and all costs of skip tracing will be considered Settlement Costs.

2.    <u>Website Notice</u>.  The Settlement Administrator will establish and maintain the Settlement Website, on which will be posted the Website Notice, a copy of this Agreement, the Notice Order and any other materials that the Parties agree to include.  These documents shall be available on the Settlement Website beginning 15 days following the Notice Order and remain at least until Final Approval.  The Settlement Administrator shall secure a URL for the Settlement Website proposed by Class Counsel and approved by NSC --www.robinsonsettlement.com.  The Settlement Website shall not bear or include NSC's logo or trademarks, or those belonging to any companies affiliated with NSC.  Ownership of the Settlement Website URL shall be transferred to NSC within 10 days after operation of the Settlement Website ceases.

3.    <u>Toll-Free Telephone Number</u>.  The Settlement Administrator will establish and maintain a toll-free telephone number that persons in the Settlement Class may call to receive more information regarding the settlement.  The E-Mail Notice and Mail Notice shall inform persons in the Settlement Class of the toll-free number.  The toll-free number will be established no later than 15 days following entry of the Notice Order and is to remain active at least until the date of the Final Approval Hearing.

4.    <u>CAFA Notice</u>.  NSC is responsible for timely compliance with all CAFA notice requirements.

F.    <u>Settlement Consideration</u>.

1.    <u>Monetary Relief</u>.  As consideration for the settlement, NSC will pay the amount of the Fund, plus the Settlement Costs.  Any award of attorneys' fees and any Service Award to Robinson shall be deducted from the Fund prior to distribution to the Settlement Class Members.  Following those deductions, the remaining amount will be distributed *pro rata* to the Settlement Class Members.

2.    <u>Prospective Relief</u>.  As additional consideration for the settlement, NSC will:  (a) agree not to assess a fee for the Self-Verification Service in excess of the cap stated at this time in section 1681j of the FCRA, $12.50, or as amended in the future, but will continue to

assess sales tax in any amounts required by law; and (b) provide one verification through the Self-Verification Service to each Settlement Class Member at no cost.

3.      Taxes.  Any person who receives a distribution from the Fund will be solely responsible for any taxes or tax-related expenses owed or incurred by that person by reason of that distribution.

4.      *Cy Pres* Distribution.  To the extent monies remain in the Fund after 120 days have passed from the date on the checks mailed to Settlement Class Members, and the remaining monies in the Fund would not allow for a second distribution of at least $5 to each Settlement Class Member after deducting the costs associated with such a distribution, such money remaining in the Fund will comprise the *Cy Pres* Distribution.  Subject to approval by the Court, the *Cy Pres* Distribution shall be made to Peer Forward and/or Economic Mobility Pathways.  The *Cy Pres* Distribution shall be made 60 days after the last day for Settlement Class Members to cash their Settlement Awards, subject to the terms above.  To the extent a second distribution is made to Settlement Class Members, any remaining monies in the Fund after 120 days have passed from the date on the checks will constitute the *Cy Pres* Distribution.

G.      Release of Released Claims.  As of the Effective Date of the settlement, Robinson and each Settlement Class Member, along with their respective heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, assigns and all persons acting for or on their behalf, shall be deemed to have fully, and forever released the Released Parties from all Released Claims described in Sections II.A.15-18. above.  Without limiting the foregoing, the Released Claims released pursuant to this settlement specifically extend to all claims and potential claims that Settlement Class Members do not know or suspect to exist in their favor as of or prior to the Effective Date, within the definition of Released Claims. Robinson and all Settlement Class Members, agree that this paragraph constitutes a waiver of California Civil Code section 1542 and any similar or comparable provisions, rights and benefits conferred by the law of any state or territory of the United States or any jurisdiction, and any principle of common law.  California Civil Code section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Robinson and each Settlement Class Member understand and acknowledge the significance of these waivers of California Civil Code Section 1542 and/or of any other applicable law relating to limitations on releases.  In connection with such waivers and relinquishment, Robinson and each Settlement Class Member acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they now know or believe to be true with respect to the subject matter of the settlement, but that they release fully, finally and forever all Released Claims, and in furtherance of such intention, the release will remain in effect notwithstanding the discovery or existence of any such additional or different facts.  Robinson acknowledges (and all Settlement Class Members by operation of law shall be deemed to have acknowledged) that the release of unknown Released Claims as set forth herein was separately bargained for and was a key element of the settlement.

 H. <u>Attorneys' Fees and Costs</u>.  No later than 15 days before the Opt-Out and Objection Deadline, Robinson shall move the Court for an award of attorneys' fees, expenses and costs to be paid to Class Counsel, in an amount not to exceed $750,000.  NSC will not object to or oppose Robinson's motion for fees and costs to the extent that the amount requested does not exceed $750,000.  The Settlement Administrator will pay any award of attorneys' fees and costs to Class Counsel, from the Fund, within 10 days that any order awarding any such attorneys' fees and costs becomes final (non-appealable).  However, Court approval of attorneys' fees, expenses and costs, or their amount, will not be a condition of the settlement, and in no event will any award of attorneys' fees, expenses and costs require NSC to pay more than the amount of the Fund.  In addition, no interest will accrue on such amounts at any time.

I.       Service Award.  NSC will not object to a Service Award to Robinson of up to $7,500, subject to Court approval.  The Settlement Administrator will pay any Service Award, from the Fund, within 10 days that any order awarding any such award becomes final (non-appealable).  However, Court approval of the Service Award, or its amount, will not be a condition of the settlement, and in no event will any Service Award require NSC to pay more than the amount of the Fund.  In addition, no interest will accrue on such amounts at any time.

J.       Opt-Out Right/Termination.

1.       Opt-Out Requirements.  Persons in the Settlement Class may request exclusion from the settlement by sending a written request to the Settlement Administrator at the address designated in the Class Notice up until the Opt-Out and Objection Deadline.  Exclusion requests must: (a) be signed by the person who requests exclusion; (b) include the full name and address of the person requesting exclusion; and (c) include the following statement: "I/we request to be excluded from the settlement in the Robinson action."  No request for exclusion will be valid unless all of the information described above is included.  No person in the Settlement Class, or any person acting on behalf of or in concert or participation with a person in the Settlement Class, may exclude any other person from the Settlement Class.

2.       Retention of Exclusions.  The Settlement Administrator will retain a copy of all requests for exclusion and will, upon written request, provide copies of any such requests to counsel for the Parties.  Class Counsel will keep any such opt-out information confidential and use it only for purposes of determining whether a person in the Settlement Class has properly opted out.  Not later than 30 days after the Opt-Out and Objection Deadline, the Settlement Administrator shall file with the Court a declaration that lists all of the opt-outs received.

3.       Cap on Opt-Outs.  The Settlement Class Members will be bound by all determinations and judgments in the Action.  In the event that the number of valid opt-out requests exceeds 100 or more persons, NSC, in its sole discretion, may terminate the settlement.  NSC shall inform Class Counsel within 15 days after it is advised in writing that the number of valid opt-out requests is higher than 100 persons as to whether it will exercise the right of termination.

K.     Objections to the Settlement.

1.     Right to Object.  Any Settlement Class Member may appear at the Final Approval Hearing to object to the proposed settlement and/or to the application of Class Counsel for an award of attorneys' fees, expenses, and costs and/or the Service Awards, but only if the Settlement Class Member has first filed a written objection with the Clerk of Court, in accordance with the requirements set forth below, by the Opt-Out and Objection Deadline.  Any Settlement Class Member who does not provide a written objection in the manner described in this Section shall be deemed to have waived any objection and shall forever be foreclosed from making any objection to the fairness, reasonableness or adequacy of the proposed settlement, the plan of allocation, or the award of any attorneys' fees and/or the Service Awards.  Further, any Settlement Class Member who intends to appear at the Final Approval Hearing must file with the Court and serve on all parties a Notice of Intention to Appear.

2.     Objection Requirements.  To be heard at the Final Approval Hearing, the Settlement Class Member must make any objection in writing and file it with the Court by the Opt-Out and Objection Deadline.   The objection must also be mailed to each of the following, postmarked not later than the last day to file the objection: (a) Class Counsel – James A. Francis, Francis Mailman Soumilas, 1600 Market Street, Suite 2510, Philadelphia, PA 19103; and (b) NSC's Counsel -- Lisa M. Simonetti, Greenberg Traurig, LLP, 1840 Century Park East, Suite 1900, Los Angeles, California 90067.   An objection must: (a) include a statement of such Settlement Class Member's specific objections; and (b) state the grounds for objection, as well as identify any documents that such objector desires the Court to consider.  In order to be heard at the Final Approval Hearing, the person objecting also must file with the Court and serve on all Parties a Notice of Intention to Appear.

L.     Final Approval.  Within 30 days following the Opt-Out and Objection Deadline, Robinson shall promptly request that the Court enter the Final Approval Order, which shall specifically include provisions that:  (a) finally approve the settlement as fair, reasonable and adequate to the Settlement Class; (b) find that the Class Notice as given was the best notice

practicable under the circumstances, is due and sufficient notice to the Settlement Class and fully satisfies the requirements of due process and Federal Rule of Civil Procedure 23; (c) approve the plan of distribution of the Fund and any interest accrued thereon; (d) finally certify the Settlement Class; (e) confirm that Robinson and the Settlement Class Members have released all Released Claims and are permanently barred and enjoined from asserting, commencing, prosecuting or continuing any of the Released Claims against the Released Parties; and (f) dismiss the Action with prejudice, without costs to any party, except as provided in this Agreement, and subject to the Court retaining continuing jurisdiction over the Parties and the Fund for the purpose of enforcement of the terms of this Agreement.

      M.    <u>Dismissal</u>.  Upon entry of the Final Approval Order, the Action shall be dismissed with prejudice as to Robinson and the Settlement Class Members.

      N.    <u>Evidentiary Preclusion/No Admissions</u>.  NSC expressly disclaims and denies any wrongdoing or liability whatsoever.  This settlement, and any and all negotiations, statements, documents and/or proceedings in connection with this settlement, shall not be construed or deemed to be evidence of an admission or concession by NSC of any liability or wrongdoing by NSC or any of their respective affiliates, agents, representatives, vendors or any other person or entity acting on their behalf, and shall not be construed or deemed to be evidence of an admission or concession that any person suffered compensable harm or is entitled to any relief.  Neither the settlement, nor any act performed or document executed pursuant to or in furtherance of the settlement:  (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, or of any wrongdoing or liability of the Released Parties; (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of the Released Parties in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal; (c) is or may be deemed a waiver of any right to challenge class certification if this settlement for any reason does not become final; or (d) is or may be deemed to be a waiver of any right to seek to enforce any arbitration provision in other cases or against persons in the Settlement Class who opt out of the settlement.  In addition, neither the fact of, nor

any documents relating to, NSC's withdrawal from the settlement, any failure of the Court to approve the settlement and/or any objections or interventions may be used as evidence for any purpose whatsoever.  The Released Parties may file the Agreement and/or the judgment in any Action or proceeding that may be brought against them in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

   O. <u>No Publicity Beyond Notice Procedures</u>.  Parties and their counsel will not publicly disseminate a press release or similar statement to publicize the settlement with the exception of neutrally-worded language, which Class Counsel may use on their websites. Class Counsel and/or Robinson will not engage in discussions with any press or news organizations about the settlement, the litigation or allegations or theories described in the complaint. The parties and their counsel will not make statements of any kind to any third party regarding the settlement prior to the filing of a motion for entry of the Notice Order, with the exception of the Settlement Administrator. After that time, the Parties may make public statements to the Court as necessary to obtain preliminary or final approval of the settlement, and Class Counsel and/or Robinson will not be prohibited from communicating with anyone, subject to the restrictions herein, including the Settlement Class regarding the Action or the settlement.  However, in all communications, Class Counsel and/or Robinson must comply with all confidentiality agreements in the Action and not disclose information that is not a part of the public record.

   P. <u>Non-Disparagement</u>.  The Parties agree not to make any statements, written or verbal, or to cause or encourage any other person to make any statements, written or verbal, that defame, disparage or in any way criticize the personal or business reputation, practices or conduct of the Parties, the Released Parties and their respective counsel concerning all Released Claims, as well as the litigation of this Action, the settlement, this Agreement and any discussions, interactions or negotiations of the settlement by the Parties and their counsel; provided, however, subject to the restrictions in Section O, nothing herein shall preclude any party or its agents,

representatives or counsel from communicating with anyone about the allegations and theories described in the complaint, responding to any inquiries under oath or in response to a government inquiry, or from making statements in the course of legal proceedings to the Court, or from communications by Class Counsel with persons in the Settlement Class with regard to the settlement.  Furthermore, nothing shall restrict Class Counsel's right to practice law, or otherwise place restrictions on Class Counsel that would violate any legal ethics rules.

IV.    **GENERAL PROVISIONS**

A.    <u>Settlement Conditioned Upon Approval</u>.  The settlement is conditioned upon entry of the Notice Order and Final Approval Order without material modification by the Court.  In the event of failure to obtain any of the required provisions of such orders, including, but not limited to, the denial of any motion seeking to direct notice or final approval, either Party may terminate the settlement by notifying the opposing party in writing within 30 days of such failure to obtain approval.  In the event of a termination under this section, or the termination of this settlement based on the cap on opt-outs, the Parties will then return, without prejudice, to the *status quo ante* as if no settlement had been negotiated or entered into.

B.    <u>No Construction Against Drafter</u>.  This Agreement will be deemed to have been drafted by the Parties, and any rule that a document shall be interpreted against the drafter will not apply.

C.    <u>Entire Agreement</u>.  This Agreement contains the entire agreement between the parties and supersedes all prior understandings, agreements or writings regarding the subject matter of this Agreement.  This Agreement may be amended or modified only by a written instrument signed by all Parties or their successors in interest or their duly authorized representatives and approved by the Court.  The provisions of the Agreement may be waived only in a writing executed by the waiving party.  The waiver by one party of any breach of this Agreement by any other party shall not be deemed a waiver, by that party or by any other party, of any other prior or subsequent breach of this Agreement.

D.     Authority.  Robinson and NSC represent and warrant that the persons signing this Agreement on their behalf have full power and authority to bind every person, partnership, corporation or entity to all terms of this Agreement.  Any person executing this Agreement in a representative capacity represents and warrants that he or she has done so freely and he or she is fully authorized to do so and to bind the party on whose behalf he or she signs this Agreement to all of the terms and provisions of this Agreement.

E.     No Assignment.  No party to this Agreement has heretofore assigned, transferred or granted, or purported to assign, transfer, or grant, any of the claims, demands or cause or causes of action disposed of by this Agreement.

F.     Receipt of Advice of Counsel.  Each party acknowledges, agrees and specifically warrants that he, she or it has fully read this Agreement and the Releases contained herein, received independent legal advice with respect to the advisability of entering this Agreement and the Releases, and the legal effects of this Agreement and the Releases, and fully understands the effect of this Agreement and the Releases.  Each party to this Agreement warrants that he, she or it is acting upon his, her or its independent judgment and upon the advice of his, her or its own counsel and not in reliance upon any warranty or representation, express or implied, of any nature or kind by any other party, other than the warranties and representations expressly made in this Agreement.

G.     Agreement Binding on Successors in Interest.  This Agreement is binding on and shall inure to the benefit of the respective heirs, successors and assigns of the Parties.

H.     Undertakings of the Parties.  The Parties agree to the approval of this settlement. The Parties further agree to undertake all steps necessary to effectuate the terms and purposes of this Agreement, to secure the Court's approval of same, and contemplate that they will oppose any objections to the settlement, including objections by any regulatory authority after CAFA notices are issued, and oppose any appeals from any orders of final approval.

I.     Execution in Counterparts.  The Parties may execute this Agreement in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

J.      Notices.  All notices to counsel provided for herein shall be sent by e-mail with a

hard copy sent by overnight mail to:

As to Robinson
and the Settlement Class:

NATIONAL CONSUMER LAW CENTER
Stuart T. Rossman
Joanna Darcus
Persis S. Yu
7 Winthrop Square, 4th Floor
Boston, MA 02110
Tel: (617) 542-8010
srossman@nclc.org
jdarcus@nclc.org
pyu@nclc.org

FRANCIS MAILMAN SOUMILAS, PC
James A. Francis
John Soumilas
1600 Market Street
Suite 2510
Philadelphia, PA 19103
Tel. (215) 735-8600
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

Justice Catalyst Law, Inc.
Brian James Shearer
Benjamin David Elga
81 Prospect Street
Brooklyn, NY 11201
Tel: (518) 732-6703
brianshearer@justicecatalyst.org

As to NSC:
GREENBERG TRAURIG, LLP
Lisa M. Simonetti
simonettil@gtlaw.com
1840 Century Park East, Suite 1900
Los Angeles, CA 90067

K.      Retention of Jurisdiction.  The Court shall retain jurisdiction with respect to

implementation and enforcement of the terms of this Agreement, and all Parties submit to the

jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in

this Agreement.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed as of January 3, 2020:

**PLAINTIFF JAMES ROBINSON**

James Robinson (Jan 3, 2020)

James Robinson

**DEFENDANT NATIONAL STUDENT CLEARINGHOUSE**

By: _____

Its:     President and CEO_____

19

**APPROVED AS TO FORM AND CONTENT:**

**FOR CLASS COUNSEL**

FRANCIS MAILMAN SOUMILAS, PC

By: _____
                    James A. Francis

Dated: __January_ _3__ , 2020

**APPROVED AS TO FORM:**

**FOR DEFENSE COUNSEL**

GREENBERG TRAURIG, LLP

By: _____
                    Lisa M. Simonetti

Dated: __Jan_ _5__ , 2020

**<u>EXHIBIT    </u>**