UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JAMES ROBINSON**, on behalf of himself and all others similarly situated,<br><br>  *Plaintiff*,<br><br>  vs.<br><br>**NATIONAL STUDENT CLEARINGHOUSE**,<br><br>  *Defendant*. | No. 1:19-cv-10749-FDS<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES AND SERVICE AWARD** |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

I.  INTRODUCTION ........................................................................................................1

    A.  Overview of Settlement Class Benefits ..............................................................1

    B.  Procedural History ..............................................................................................2

    C.  Notice Program ...................................................................................................3

II. ARGUMENT................................................................................................................3

    A.  Awarding Attorneys' Fees to Class Counsel Using the Percentage of the
        Fund Method is Fair and Reasonable..................................................................3

        1.  The Size of The Fund and the Number of Persons Benefitted ...............6

        2.  The Skill, Experience, and Efficiency of the Attorneys Involved ...............6

        3.  The Complexity and Duration of the Litigation ......................................7

        4.  The Risks of the Litigation .....................................................................7

        5.  The Amount of Time Devoted to the Case by Counsel ..........................8

        6.  Awards in Similar Cases.........................................................................8

        7.  Public Policy Considerations .................................................................9

    B.  A Lodestar Cross-Check Further Supports the Requested Attorney's Fee
        Award..................................................................................................................9

    C.  The Court Should Approve a Service Award to Plaintiff James Robinson...........10

III. CONCLUSION...........................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Aetna, Inc. Sec. Litig.*,
   2001 WL 20928 (E.D. Pa. Jan. 4, 2001) ................................................................................10

*In re Am. Dental Partners, Inc. Sec. Litig.*,
   2010 WL 1427404 (D. Mass. Apr. 9, 2010) .............................................................................4

*Applegate v. Formed Fiber Techs., LLC*,
   2013 WL 6162596 (D. Me. Nov. 21, 2013) .............................................................................5

*Bennett v. Roark Capital Grp., Inc.*,
   2011 WL 1703447 (D. Me. May 4, 2011) ...............................................................................5

*Bezdek v. Vibram USA, Inc.*,
   79 F. Supp. 3d 324 (D. Mass. 2015) .........................................................................................5

*Bezdek v. Vibram USA, Inc.*,
   809 F.3d 78 (1st Cir. 2015) .......................................................................................................6

*In re Bisys Sec. Litig.*,
   2007 WL 2049726 (S.D.N.Y. July 16, 2007) ........................................................................10

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ..................................................................................................................4

*Bussie v. Allamerica Fin'l Corp.*,
   1999 WL 342042 (D. Mass. May 19, 1999) ..........................................................................10

*Duhaime v. John Hancock Mut. Life Ins. Co.*,
   989 F. Supp. 375 (D. Mass. 1997) ............................................................................................4

*Flores v. Express Servs., Inc.*,
   2017 WL 1177098 (E.D. Pa. Mar. 30, 2017) ...........................................................................9

*Gordan v. Massachusetts Mut. Life Ins. Co.*,
   2016 WL 11272044 (D. Mass. Nov. 3, 2016) .....................................................................5, 11

*Henderson v. Acxiom Risk Mitigation, Inc.*,
   C.A. No. 12-589 (ECF 116) (E.D. Va. Aug. 4, 2015) ...........................................................10

*Ingram v. The Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) ............................................................................................10

*Kelly v. Bus. Info. Grp., Inc.*,
   2019 WL 414915 (E.D. Pa. Feb. 1, 2019) ..........................................................................9

*In re Lupron Mktg. & Sales Practices Litig.*,
   2005 WL 2006833 (D. Mass. Aug. 17, 2005) ............................................................6, 7, 10

*McCormick v. Festiva Dev. Grp., LLC*,
   2011 WL 2457883 (D. Me. June 20, 2011) ......................................................................5

*Medoff v. CVS Caremark Corp.*,
   2016 WL 632238 (D.R.I. Feb. 17, 2016).......................................................................5, 7

*In re Merry-Go-Round Enterprises, Inc.*,
   244 B.R. 327 (Bankr. D. Md. 2000) ................................................................................10

*Patel v. Trans Union, LLC*,
   2018 WL 125194 (N.D. Cal. March 11, 2018)..................................................................9

*In re Puerto Rican Cabotage Antitrust Litig.*,
   815 F. Supp. 2d 448 (D.P.R. 2011)..................................................................................11

*In re Relafen Antitrust Litig.*,
   231 F.R.D. 52 (D. Mass. 2005).........................................................................................5

*In re Rite Aid Corp. Sec. Litig.*,
   146 F. Supp. 2d 706 (E.D. Pa. 2001) ...............................................................................10

*Roberts v. TJX Companies, Inc.*,
   2016 WL 8677312 (D. Mass. Sept. 30, 2016) ..................................................................5

*Rosted v. First USA Bank*,
   No. 97-1482 (Doc. No. 198) (W.D. Wash. June 15, 2001) .............................................10

*Safeco Ins. Co. of Am. v. Burr*,
   551 U.S. 47 (2007).............................................................................................................7

*In re StockerYale, Inc. Sec. Litig.*,
   2007 WL 4589772 (D.N.H. Dec. 18, 2007).......................................................................5

*In re Telik, Inc., Securities Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008)..............................................................................10

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995)...............................................................................................4

*Thomas v. Backgroundchecks.com*,
   C.A. No. 13-29, ECF 114 (E.D. Va. Aug. 5, 2015).........................................................10

*Van Vranken v. ARCO*,
   901 F. Supp. 294 (N.D. Cal. 1995) ...............................................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)..............................................................................................4

## STATUTES & FEDERAL RULES

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, *et seq.* .....................................1, 2, 6, 7, 8, 9

   15 U.S.C. § 1681j.............................................................................................................1

   15 U.S.C. § 1681j(f)..........................................................................................................1

   15 U.S.C. § 1681n(a)(1)-(2).............................................................................................7

   15 U.S.C. § 1681n(a)(3)...................................................................................................3

   15 U.S.C. § 1681o(a)(2)...................................................................................................3

Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A §§ 1-11 ................1

   Mass. Gen. Laws ch. 93A § 9(4) .....................................................................................3

Massachusetts Credit Reporting Act, Mass. section 59(c) Gen. Laws ch. 93 §§ 50-67....................................................................................................................................1, 7

   Mass. Gen. Laws ch. 93 § 63(3) ......................................................................................3

   Mass. Gen. Laws ch. 93 § 64 ...........................................................................................3

FED. R. CIV. P. 23(h) ..............................................................................................................3

## OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION (4th ed. 2004) .......................................................10

Plaintiff James Robinson respectfully submits this Memorandum of Law in support of his petition for an award of attorney's fees, expenses, and costs in the amount of $750,000 and an individual settlement and service award for Plaintiff Robinson in the amount of $7,500. Defendant National Student Clearinghouse ("NSC") does not oppose the award sought herein.

## I.  INTRODUCTION

### A.  Overview of Settlement Class Benefits

Plaintiff Robinson brought this lawsuit as a class action on behalf of consumers in Massachusetts and across the country whom NSC allegedly overcharged for NSC's "Self-Verification Service," a product that verifies information regarding post-secondary educational attainment.[1] The efforts of Plaintiff Robinson and Class Counsel have created substantial benefits for the 57,273 Settlement Class Members here.

First, the settlement requires NSC to effect certain important changes to its business practices resulting in preventing the conduct alleged in the Complaint, in the future. NSC has agreed not to assess a fee for the Self-Verification Service in excess of the current cap of $12.50 stated at this time in section 1681j of the FCRA, or as amended in the future. Settlement Agreement, ECF 24-1, at § III.F.2.

Second, the settlement creates a non-reversionary Settlement Fund in the amount of $1,956,246.27. *Id.* at §§ III.C-D. Net of the proposed deduction for attorneys' fees, costs and a service award for Class Representative Robinson, if approved, this Fund provides for an automatic

---

[1] Robinson alleges that the amounts NSC charges for the Self-Verification Service are in excess of the statutory maximums mandated by section 1681j(f) of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681j(f), with respect to consumers outside of Massachusetts, and mandated by section 59(c) of the Massachusetts Credit Reporting Act ("MCRA"), Mass. Gen. Laws ch. 93 §§ 50-67, with respect to consumers within the Commonwealth of Massachusetts. Robinson also alleges that NSC's conduct is an unfair and deceptive trade practice that violates the Massachusetts Consumer Protection Act ("MCPA"), Mass. Gen. Laws ch. 93A §§ 1-11.

distribution of $1,198,746.27 to Settlement Class Members, or $20.93 each.[2] This is more than *triple* the $5.89 that NSC overcharged Settlement Class Members.[3]

In addition, each Settlement Class Member will receive one verification through Defendant's Self-Verification Service at no cost, a separate benefit worth an additional $715,912.50.[4]

Thus, the settlement creates a total financial benefit of $2,575,158.77 to the Settlement Class Members and additional future benefits[5] because Defendant will not charge any consumer more than the applicable FCRA-mandated cap for consumer disclosures for the Self-Verification Service in the future. ECF 24-1 at § III.F.2.

**B.     Procedural History**

Plaintiff filed his complaint on April 18, 2019. ECF 1. Soon thereafter, the parties initiated extensive arms-length settlement discussions, including a full-day, in-person mediation before the Honorable Diane Welsh (Ret.) of JAMS on August 9, 2019. Before mediation, NSC provided disclosures including the number of class members and the total amount of Plaintiff's alleged overcharge. The parties reached an initial agreement that day and notified the Court. ECF 17.

---

[2]     NSC will separately bear all costs of notice to the class and settlement administration. ECF 24-1 at § III.D. Settlement Class Members will receive automatic payments without the need to take any action.

[3]     NSC disclosed that the total amount it charged Settlement Class Members above the then-applicable maximum FCRA disclosure fee cap was $337,081.80.

[4]     If each of the 57,273 Settlement Class Members claims this benefit by using the Self-Verification Service at some point in the future, each will have saved at least $12.50, the current FCRA disclosure fee cap.

[5]     While not a factor in Plaintiff's valuation of the settlement for the purposes of this Motion, it should be noted that there is a substantial projected future economic benefit of this settlement. The average overcharge NSC imposed on consumers, $5.89, multiplied by the approximately 114,546 consumers who will likely be subject to the fee over the next ten years, results in a savings to those future individuals over the next decade in the amount of approximately $674,676.00.

Documenting a formal settlement agreement and related documents took additional time and included the preparation and exchange of drafts and a series of telephone and written negotiations concerning the specific terms and conditions of the agreement and exhibits to the agreement, including the proposed class notices and forms. The parties finalized their agreement on January 3, 2020, a copy of which Robinson included as an exhibit to his Consent Motion to Direct Notice to the Class. *See* ECF 24, ECF 24-1. On January 21, 2020, this Court entered an Order directing notice to the Settlement Class. ECF 25.

**C.    Notice Program**

On February 5, 2020, the Settlement Administrator, Rust Consulting, established the Settlement Website, on which it posted the Website Notice and other settlement-related documents, and established a toll-free telephone number for Settlement Class Members to call for information regarding the settlement per the requirements of the Settlement Agreement and this Court's Order of January 21, 2020 directing notice to the class. *See* ECF 24-1 at § III.E; ECF 25 at 4. The Settlement Administrator will file a detailed declaration concerning the efficacy of the notice plan on June 5, 2020. ECF 25.

## II.    ARGUMENT

**A.    Awarding Attorneys' Fees to Class Counsel Using the Percentage of the Fund Method is Fair and Reasonable**

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." FED. R. CIV. P. 23(h). Both the federal and Massachusetts statutes under which Plaintiff sued provide for the award of attorney's fees and costs. 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2); Mass. Gen. Laws ch. 93 §§ 63(3), 64; Mass. Gen. Laws ch. 93A § 9(4).

In cases in which the parties' settlement creates a common fund of money for the benefit of class members, such as the one at bar, this Court may award attorney's fees to Class Counsel based upon "a reasonable percentage of the fund recovered for those benefitted by the litigation," a method often abbreviated as "POF." *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).[6] Of the two methods recognized by the First Circuit for calculating attorneys' fees in the class action context involving a common fund, the POF method "functions exactly as the name implies: the court shapes the counsel fee based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation." *In re Thirteen Appeals*, 56 F.3d at 305. Moreover, the POF method "appropriately aligns the interests of the class with the interests of the class counsel." *Duhaime v. John Hancock Mut. Life Ins. Co.*, 989 F. Supp. 375, 377 (D. Mass. 1997)*; see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (the POF method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation").

In the First Circuit, the POF method "is the prevailing praxis" because it is "less burdensome to administer" and avoids the need to "review the time records of a multitude of attorneys in order to determine the necessity and reasonableness of every hour expended[.]" *In re Thirteen Appeals*, 56 F.3d at 307; *see also In re Am. Dental Partners, Inc. Sec. Litig.*, 2010 WL 1427404, at *1 (D. Mass. Apr. 9, 2010) ("In common fund cases, the trend increasingly favors the calculation of a fee award by use of the percentage of the fund (POF) method.").

---

[6] This Court also has the discretion to award attorney's fees based upon class counsel's lodestar by "determining the number of hours productively spent on the litigation and multiplying those hours by reasonable hourly rates." *In re Thirteen Appeals*, 56 F.3d 295 at 305, 307. Class Counsel respectfully urges this Court to adopt the POF method for the reasons set forth below, including that it is supported by a lodestar crosscheck. *See infra* at §II.B.

4

Plaintiff's request for an award of attorneys' fees amounts to approximately 28% of the total economic value created by the settlement. This amount – negotiated only after the substantive terms of the settlement were agreed upon – is supported by the POF method that First Circuit courts use to determine fees and costs in common fund class action cases. *Bezdek v. Vibram USA, Inc.*, 79 F. Supp. 3d 324, 349-50 (D. Mass. 2015) (noting a range of 20–30%, with 25% as the benchmark). *See also Roberts v. TJX Companies, Inc.*, 2016 WL 8677312, at *11 (D. Mass. Sept. 30, 2016) (approving one-third of the fund with lodestar cross-check); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 85-89 (D. Mass. 2005) (approving 33 1/3% fee as a percentage of the fund).

Courts routinely grant attorneys' fee awards of one-third of the settlement fund, further bolstering the reasonableness of Plaintiff's smaller 28% request. *See Gordan v. Massachusetts Mut. Life Ins. Co.*, 2016 WL 11272044, at *2 (D. Mass. Nov. 3, 2016) ("the one-third fee requested here is fair and reasonable"); *In re StockerYale, Inc. Sec. Litig.*, 2007 WL 4589772, *6 (D.N.H. Dec. 18, 2007) (awarding fees in the amount of 33% of settlement fund); *McCormick v. Festiva Dev. Grp., LLC*, 2011 WL 2457883, *1 (D. Me. June 20, 2011) (awarding fees in the amount of one third of settlement fund); *Applegate v. Formed Fiber Techs., LLC*, 2013 WL 6162596, *1 (D. Me. Nov. 21, 2013) (same); *Bennett v. Roark Capital Grp., Inc.*, 2011 WL 1703447, *2 (D. Me. May 4, 2011) (same); *Medoff*, 2016 WL 632238, at *9 (awarding 30% of common fund and observing that "as several courts have concluded, 30% is not out of proportion with recovery percentages in large class action litigations.").

Although the First Circuit has not set forth a fixed test for courts to apply to requests for an award of attorneys' fees under the POF method, courts in this district often consider the following factors:

> (1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and

> duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations.

*In re Lupron Mktg. & Sales Practices Litig.*, 2005 WL 2006833, *3 (D. Mass. Aug. 17, 2005) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)). Each of the above factors supports Plaintiff's request for an award of attorneys' fees and expenses here.

### 1. The Size of The Fund and the Number of Persons Benefitted

The Settlement benefits nearly 60,000 Settlement Class Members, each of whom shall receive approximately $20.93 each – more than three times the average amount Settlement Class Members were overcharged for the Self-Verification Service – without having to make a claim or take any affirmative action. That is, because the cash portion of the relief here is on a *per capita* basis and not a *pro rata* basis, each Settlement Class Member will receive the amount noted on the postcard or email notice he or she was sent. *Cf. Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 83 (1st Cir. 2015) (affirming fairness of $8.44 refund per pair of shoes even though lower than $20-$50 estimate included on notice materials). Moreover, each shall receive a free Self-Verification Service for future use. Most Settlement Class Members have received notice as of the date of this filing and to date, the Settlement Administrator has received no objections to the Settlement or to the requested fee award, which was clearly disclosed in the notices Settlement Class Members received. ECF 24-4 at 4, 24-5 at 2. This factor weighs heavily in favor of granting Class Counsel its requested award fees and expenses.

### 2. The Skill, Experience, and Efficiency of the Attorneys Involved

Here, Class Counsel litigated this case efficiently on behalf of Plaintiff Robinson and the Settlement Class because of their extensive experience in FCRA and class action litigation. *See See* accompanying Declarations of James A. Francis, Stuart T. Rossman and Benjamin Elga (setting forth experience and qualifications of Class Counsel firms). This depth of experience with

consumer claims and class action litigation allowed Class Counsel to pursue this case and negotiate a settlement that capitalized on the claims' strengths while taking into account the risks of continued litigation. Moreover, Defendant was more than ably represented by Greenberg Traurig, a high caliber national defense firm. This factor, too, weighs heavily in favor of granting Class Counsel its requested award fees and expenses.

### 3. The Complexity and Duration of the Litigation

Plaintiff's novel theory of liability required a complex and nuanced litigation strategy. From the outset, because Defendant's conduct has not previously been characterized as consumer reporting activity, Class Counsel had to perform extensive research, draw on their years of previous FCRA litigation experience and carefully draft a Complaint that highlighted those elements of Defendant's alleged conduct that could bring it within the coverage of the FCRA and MCRA, the state-law counterpart.

### 4. The Risks of the Litigation

In this matter, Class Counsel represented Plaintiff Robinson and the Settlement Class on a wholly contingent basis, undertaking a significant risk of non-payment, a factor that "weighs more heavily in favor of rewarding litigation counsel." *Medoff v. CVS Caremark Corp.*, 2016 WL 632238, *9 (D.R.I. Feb. 17, 2016) (citing *In re Lupron*, 2005 WL 2006833, at *4 ("the risk assumed by an attorney is perhaps the foremost factor in determining an appropriate award")). Moreover, Class Counsel faced uncertainty regarding whether statutory and punitive damages under the FCRA would be available for class members in this matter. *See* 15 U.S.C. § 1681n(a)(1)-(2) (statutory and punitive damages available only upon a finding that a defendant has "willfully" failed to comply with FCRA); *see also Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-70 (2007) (a statutory reading that is not "objectively unreasonable" may shield a defendant from a finding that its conduct willfully violated the FCRA).

The risks of this litigation weigh heavily toward granting Plaintiff's request for Class Counsel's award of attorney's fees and expenses.

5. **The Amount of Time Devoted to the Case by Counsel**

In this matter, Class Counsel thoroughly investigated the facts of Plaintiff Robinson's interactions with Defendant and drafted a robust Complaint against Defendant that set forth detailed allegations of how Defendant's conduct, which had never previously been characterized as consumer reporting activity, should be considered subject to the requirements of the FCRA and its Massachusetts analog. Rather than move to dismiss or otherwise engage in protracted litigation, Defendant early on proposed mediation and refunds for those consumers affected by the alleged conduct.

Class Counsel engaged in extensive negotiations and informal discovery concerning the number of affected consumers in preparation for mediation. Indeed, much of the time spent on this case was related to preparing for and attending mediation at which the parties reached their agreement in principle. Following that, much time and effort went into crafting the Settlement Agreement, portions of which were highly contested. Substantial time went into telephone conference calls and exchanges of drafts of settlement documents. This factor highlights the very high rate of return on the hours Class Counsel invested in this matter and weighs in favor of granting Class Counsel its requested award fees and expenses.

6. **Awards in Similar Cases**

As noted above, Class Counsel's request for attorneys' fees and expenses, which amounts to approximately 28% of the economic value created by the Settlement Agreement, is in step with other awards of attorneys' fees and costs.

### 7. Public Policy Considerations

Here, public policy supports an award to Class Counsel because of the primary boon created by the Settlement Agreement: Defendant's commitment to prospective compliance with the FCRA's consumer disclosure fee cap. Because of Defendant's near universal reach in the enrollment verification information space, it is not unreasonable to assume that hundreds of thousands of students will benefit from lower costs for the Self-Verification Service in the years to come. This factor supports Plaintiff's request as well.

### B. A Lodestar Cross-Check Further Supports the Requested Attorney's Fee Award

Consideration of Class Counsel's lodestar in this matter underscores the reasonableness of the award of attorneys' fees and expenses requested by Plaintiff here. The attorneys and paralegals working on this case contemporaneously recorded their time using computerized billing software. The lodestar for all counsel here as described in counsels' Declarations is $379,588.00, reflecting 613.6 hours of attorney and paralegal time, and $7,052.85 in unreimbursed costs, for a total of fees and costs of $386,640.85. *See* accompanying Declarations of James A. Francis, Stuart T. Rossman and Benjamin Elga.

Thus, the requested award of attorneys' fees and expenses in the amount of $750,000 is only 1.98 times more than Class Counsel's lodestar, a multiplier routinely deemed reasonable in class action cases. *See Flores v. Express Servs., Inc.*, 2017 WL 1177098, *4 (E.D. Pa. Mar. 30, 2017) (multiplier of 4.6 reasonable for FMS because of risk of non-recovery, lack of objections to the fee from defendant or class members, counsel's expertise and efficiency, substantial monetary benefit for class members, and defendant practice changes that "strongly [benefit] the public-at-large"); *Kelly v. Bus. Info. Grp., Inc.*, 2019 WL 414915, *21 (E.D. Pa. Feb. 1, 2019) (multiplier of 2.11 reasonable for FMS and co-counsel considering similar factors); *Patel v. Trans Union, LLC*, 2018 WL 125194 (N.D. Cal. March 11, 2018) (court granted fee of one-third of the settlement

9

fund, representing almost a 2.0 multiplier of lodestar); *Henderson v. Acxiom Risk Mitigation, Inc.*, C.A. No. 12-589 (E.D. Va. Aug. 4, 2015) (ECF 116) (court approved fees of 30% of the $20.8 million settlement fund, a 3.05 multiplier of lodestar); *Thomas v. Backgroundchecks.com*, C.A. No. 13-29 (E.D. Va. Aug. 5, 2015) (ECF 114) (court approved fee of 28.9% of an $18 million settlement fund, equating to a multiplier of 3.47). Multipliers of 3 or above are in line with awards by many other federal courts.[7]

## C. The Court Should Approve a Service Award to Plaintiff James Robinson

Class Counsel requests that this Court approve the payment of a $7,500 individual settlement and service, or incentive, award to Plaintiff, now Class Representative, James Robinson for his service to the Settlement Class. Mr. Robinson is giving Defendant a full general release as a term of the Settlement.

A service award for bringing and litigating this case on behalf of the Class is permissible and promotes a public policy of encouraging individuals to undertake the responsibility of representative lawsuits. MANUAL FOR COMPLEX LITIGATION, § 21.62, at n. 971 (4th ed. 2004) (citing *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990); *In re Lupron*, 2005 WL 2006833, at *7 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an

---

[7] *See, e.g., In re Telik, Inc., Securities Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("multipliers of over 4 are routinely awarded by courts, including this Court"); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (multiplier of 2.99 "falls well within the parameters set in this district and elsewhere"); *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) (multiplier of 4.5 to 8.5 reasonable); *In re Merry-Go-Round Enterprises, Inc.*, 244 B.R. 327 (Bankr. D. Md. 2000) (multiplier of 19.6); *Bussie v. Allamerica Fin'l Corp.,* 1999 WL 342042 (D. Mass. May 19, 1999) (multiplier of 3.3 reasonable); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685 (N.D. Ga. 2001) (multiplier between 2.5 and 4.0 reasonable); *Rosted v. First USA Bank*, No. 97-1482 (Doc. No. 198) (W.D. Wash. June 15, 2001) (multiplier of 3.0 reasonable); *In re Aetna, Inc. Sec. Litig.*, 2001 WL 20928 (E.D. Pa. Jan. 4, 2001) (multiplier of 3.6 reasonable); *Van Vranken v. ARCO*, 901 F. Supp. 294 (N.D. Cal. 1995) (multiplier of 3.6 reasonable).

individual to participate in the suit.") (citation omitted).  Courts routinely approve service awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.  *In re Puerto Rican Cabotage Antitrust Litig.*, 815 F. Supp. 2d 448, 468 (D.P.R. 2011).

Plaintiff Robinson has been closely involved with this case from the beginning.  His efforts were instrumental in providing the necessary background information and documents that make this case possible and his desire and willingness to seek relief for others similar to him helped to create the benefits all Settlement Class Members will enjoy here.  A service award of $7,500.00 is reasonable and falls within the range of awards approved in other class actions.  *See, e.g., Gordan*, 2016 WL 11272044, at *3 (approving award of $20,000 to each named plaintiff for "searching for, providing, requesting and obtaining critical documents.").

### III.   CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that this Court grant the instant Motion and enter the proposed order filed herewith.

DATED: April 21, 2020                             Respectfully submitted,

**JAMES ROBINSON**, *by his attorneys*,

/s/Stuart T. Rossman
Stuart T. Rossman, B.B.O. No. 430640
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th Floor
Boston, MA 02110
Tel: (617) 542-8010
srossman@nclc.org

Joanna Darcus, B.B.O. No. 601146
NATIONAL CONSUMER LAW CENTER
1001 Connecticut Avenue NW, Suite 510
Washington, DC 20036
(202) 452-6252 tel.
(202) 296-4062 fax
jdarcus@nclc.org

Benjamin David Elga*
Brian James Shearer*
JUSTICE CATALYST LAW
81 Prospect Street
Brooklyn, NY 11201
518-732-6703
belga@justicecatalyst.org
brianshearer@justicecatalyst.org

James A. Francis*
John Soumilas*
Jordan M. Sartell*
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com
jsartell@consumerlawfirm.com

*admitted *pro hac vice*