# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JAMES ROBINSON**, on behalf of himself and all others similarly situated, | No. 1:19-cv-10749-FDS |
| *Plaintiff*, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT** |
| vs. | |
| **NATIONAL STUDENT CLEARINGHOUSE,** | |
| *Defendant*. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... iii

I.      INTRODUCTION ....................................................................................................... 1

II.     HISTORY OF THE LITIGATION ........................................................................... 2

        A.     Plaintiff's Claims .......................................................................................... 2

        B.     Plaintiff Thoroughly Investigated His Claims ............................................. 2

        C.     The Notice Program and the Response of Settlement Class Members ................... 3

III.    ARGUMENT IN SUPPORT OF FINAL APPROVAL ......................................... 4

        A.     The Settlement Class Meets the Requirements of Rule 23 and This Court
               May Certify It for the Limited Purpose of Settlement ................................ 4

               1.      Numerosity ........................................................................................ 4

               2.      Commonality ..................................................................................... 4

               3.      Typicality .......................................................................................... 5

               4.      Adequacy ........................................................................................... 5

               5.      Predominance .................................................................................... 7

               6.      Superiority ......................................................................................... 8

               7.      Manageability .................................................................................... 8

        B.     The Proposed Settlement Is Fair, Reasonable and Adequate ...................... 9

               1.      Plaintiff and Class Counsel Have Adequately Represented the
                       Class ................................................................................................ 10

               2.      The Settlement Agreement Is the Result of Engaged, Arms-Length
                       Negotiations Overseen by an Experienced Mediator ...................... 10

               3.      The Settlement Provides Substantial Relief for Settlement Class
                       Members .......................................................................................... 11

               4.      The Settlement Agreement Is a Preferable Alternative to the Risks
                       Each Party Would Face Through Continued Litigation ................... 11

               5.      The Proposed Award of Attorney's Fees Is Fair and Reasonable ............ 14

6.    The Method of Providing Relief Will Be Effective....................................14

7.    The Settlement Treats All Settlement Class Members Fairly...................15

C.    The Objections Are Without Merit and Should Be Overruled ............................16

1.    Objector Paúl Camarena ...........................................................................16

2.    Objector Daniel P. John............................................................................18

3.    On Balance, the Reaction of Settlement Class Members Supports
      Final Approval ..........................................................................................19

IV.   CONCLUSION.................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amchem Products, Inc. v. Windsor*,
    521 U.S. 591 (1997).............................................................................4, 5, 8, 9

*Bacchi v. Massachusetts Mut. Life Ins. Co.*,
    2017 WL 5177610 (D. Mass. Nov. 8, 2017) ........................................................12

*Barry v. Moran*,
    2008 WL 7526753 (D. Mass. Apr. 7, 2008) ..........................................................5

*Bezdek v. Vibram USA Inc.*,
    79 F. Supp. 3d 324 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ...........10, 19

*Bezdek v. Vibram USA, Inc.*,
    809 F.3d 78 (1st Cir. 2015).................................................................................10

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980)...........................................................................................18

*Carter v. Shalhoub Mgmt. Co., Inc.*,
    2017 WL 5634300 (C.D. Cal. Mar. 15, 2017) ......................................................13

*Cortez v. Trans Union, LLC*,
    617 F.3d 688 (3d Cir. 2010)...............................................................................13

*Duhaime v. John Hancock Mutual Life Ins. Co.*,
    177 F.R.D. 54 (D. Mass. 1997)....................................................................5, 6, 8

*Flores v. Express Services, Inc.*,
    2017 WL 1177098 (E.D. Pa. Mar. 30, 2017)........................................................13

*Garcia-Rubiera v. Calderon*,
    570 F.3d 443 (1st Cir. 2009)................................................................................4

*Giddiens v. LexisNexis Risk Solutions, Inc.*,
    No. 2:12-cv-2624 (ECF 55, ¶ C) (E.D. Pa. Jan. 20, 2015) .....................................7

*Gorsey v. I.M. Simon & Co.*,
    121 F.R.D. 135 (D. Mass. 1988)...........................................................................4

*Grace v. Perception Technology, Inc.*,
    128 F.R.D. 165 (D. Mass. 1989)...........................................................................8

*Kandel v. United States*,
   115 Fed. Cl. 749 (2014) ...............................................................................16

*Kelly v. Bus. Info. Group, Inc.*,
   2019 WL 414915 (E.D. Pa. Feb. 2, 2019) ..................................................7

*King v. Gen'l Info. Serv's, Inc.*,
   C.A. No. 10-6850 (ECF 125) (E.D. Pa. Nov. 14, 2014).............................13

*Lapan v. Dick's Sporting Goods, Inc.*,
   2015 WL 8664204 (D. Mass. Dec. 11, 2015)...............................................6

*LaRocque v. TRS Recovery Services, Inc.*,
   285 F.R.D. 139 (D. Me. 2012).....................................................................7

*In re Lupron Mktg. & Sales Practices Litig.*,
   345 F. Supp. 2d 135 (D. Mass. 2004) ..........................................................9

*In re Lupron Mktg. & Sales Practices Litig.*,
   228 F.R.D. 75 (D. Mass. 2005)...................................................................19

*Marcum v. Dolgencorp, Inc.*,
   No. 12-cv-108 (ECF 78) (E.D. Va. Oct. 16, 2014)....................................13

*McCurley v. Royal Seas Cruises, Inc.*,
   2019 WL 3817970 (S.D. Cal. Aug. 14, 2019) ...........................................16

*In re Nexium (Esomeprazole) Antitrust Litig.*,
   296 F.R.D. 47 (D. Mass. 2013).....................................................................5

*Patel v. Trans Union, LLC*,
   308 F.R.D. 292 (N.D. Cal. 2015)..................................................................7

*Patel v. Trans Union, LLC*,
   No. 14-cv-00522-LB, 2018 WL 1258194 (N.D. Cal. Mar. 11, 2018)......13

*Patrick v. Interstate Mgmt. Co., LLC*,
   No. 15-cv-1252 (ECF 49) (M.D. Fla. Apr. 29, 2016)................................13

*In re Payment Card Interchange Fee*,
   330 F.R.D. 11 (E.D.N.Y. 2019).............................................................5, 10

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)......................................................................................8

*Ramirez v. Trans Union, LLC*,
   2017 WL 5153280 (N.D. Cal. Nov. 7, 2017) ..............................................7

*Ramirez v. TransUnion, LLC,*
    951 F.3d 1008 (9th Cir. 2020) ........................................................17

*Randle v. SpecTran,*
    129 F.R.D. 386 (D. Mass. 1988)........................................................8

*In re Relafen Antitrust Litig.,*
    231 F.R.D. 52 (D. Mass. 2005)........................................................19

*Roberts v. TJX Cos., Inc.,*
    2016 WL 8677312 (D. Mass. Sept. 30, 2016) ........................................12

*Robinson v. Gen'l Info. Serv's, Inc.,*
    C.A. No. 11-7782 (ECF 55) (E.D. Pa. Nov. 4, 2014) ..............................13

*Safeco Ins. Co. of Am. v. Burr,*
    551 U.S. 47 (2007).....................................................................13

*Sapp v. Experian Info. Solutions,*
    2013 WL 2130956 (E.D. Pa. May 15, 2013) .........................................7

*Simons v. Aegis Comm's Group,*
    No. 2:14-cv-04012 (ECF 29) (W.D. Mo. Oct. 15, 2014) ................... 13-14

*Southern States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.,*
    241 F.R.D. 85 (D. Mass. 2007).........................................................5

*In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.,*
    56 F.3d 295 (1st Cir. 1995)...........................................................18

*Van Horn v. Nationwide Prop. & Cas. Ins. Co.,*
    2009 WL 773869 (N.D. Ohio Mar. 19, 2009) ......................................16

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)..................................................................4, 5

*Washington v. CSC Credit Services, Inc.,*
    199 F.3d 263 (5th Cir. 2000) ........................................................18

*Waste Mgt. Holdings, Inc. v. Mowbray,*
    208 F.3d 288 (1st Cir. 2000)...........................................................7

*White v. Experian Info. Solutions,*
    993 F. Supp. 2d 1154 (C.D. Cal. 2014), *aff'd sub nom. Radcliffe v. Experian*
    *Info. Solutions, Inc.*, 818 F.3d 537 (9th Cir. 2016)...................................7

## S<small>TATUTES</small> & F<small>EDERAL</small> R<small>ULES</small>

15 U.S.C. § 78u-4(a)(7) ...................................................................16

Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x, *et seq.* ................................................ *passim*

    15 U.S.C. § 1681j ........................................................................................ 15

    15 U.S.C. § 1681n .................................................................................. 12, 17

    15 U.S.C. § 1681n(a) ................................................................................... 12

    15 U.S.C. § 1681n(a)(1)(A) ........................................................................ 17

    15 U.S.C. § 1681o(a) ................................................................................... 12

FED. R. CIV. P. 23 ........................................................................................ *passim*

    FED. R. CIV. P. 23(a) .............................................................................. 4, 5, 9

    FED. R. CIV. P. 23(a)(1) ................................................................................ 4

    FED. R. CIV. P. 23(a)(2) ................................................................................ 5

    FED. R. CIV. P. 23(a)(3) ................................................................................ 5

    FED. R. CIV. P. 23(a)(4) .............................................................................. 10

    FED. R. CIV. P. 23(b) .................................................................................... 9

    FED. R. CIV. P. 23(b)(3) .......................................................................... 4, 7, 8

    FED. R. CIV. P. 23(c) .................................................................................. 17

    FED. R. CIV. P. 23(c)(2)(B) ........................................................................ 16

    FED. R. CIV. P. 23(c)(2)(B)(iii) .................................................................. 16

    Fed. R. Civ. P. 23(e)(2) ......................................................................... 5, 9, 10

    FED. R. CIV. P. 23(e)(2)(A) .......................................................................... 5

    FED. R. CIV. P. 23(e)(2)(B) ........................................................................ 10

    FED. R. CIV. P. 23(f) .................................................................................. 12

Massachusetts Consumer Protection Act, MASS GEN. LAWS ch. 93A §§ 1-11 ............................. 2

Massachusetts Credit Reporting Act, MASS. GEN. LAWS ch. 93 §§ 50-67 ................................ 2, 15

    MASS. GEN. LAWS ch. 93 §§ 59(c) .............................................................. 15

## O<small>THER</small> A<small>UTHORITIES</small>

N<small>ATIONAL</small> C<small>ONSUMER</small> L<small>AW</small> C<small>ENTER</small>, *Fair Credit Reporting* (9th ed. 2017)...................................6

# I.    INTRODUCTION

Plaintiff James Robinson ("Plaintiff" or "Robinson"), by his undersigned counsel, respectfully submits this Memorandum of Law in support of his Motion for Final Approval of the Proposed Class Action Settlement. If approved, the settlement will resolve all claims asserted in this litigation on behalf of a proposed nationwide class against Defendant National Student Clearinghouse ("NSC").

This Court should grant final approval because the proposed settlement provides a fair, reasonable, and adequate recovery for the Settlement Class Members.[1] The Settlement Agreement provides for a substantive practice change, namely NSC's agreement not to assess fees in excess of the cap mandated by the Fair Credit Reporting Act, 15 U.S.C. 1681 *et seq*. This practice change will benefit all Settlement Class Members and other consumers going forward. NSC will also provide one verification through the Self-Verification Service to each Settlement Class Member at no cost.

The Settlement Agreement also establishes an approximately $1.9 million Settlement Fund to provide cash payments for Settlement Class Members, an individual settlement and service award for Plaintiff, and attorneys' fees and costs. This $1.9 million amount exceeds the amount NSC allegedly overcharged the class, which disclosed was $337,081.80.

NSC has separately borne all costs of notice to the class, which successfully reached 99.87% of Settlement Class Members, and will also pay costs associated with settlement administration and the distribution of payments to Settlement Class Members, each of whom will

---

[1] Unless otherwise indicated, capitalized terms are defined in the parties' Settlement Agreement. Dkt. 24-1.

receive automatic payments without the need to take any action should this Court finally approve the parties' proposed settlement.[2]

As set forth below, the Settlement meets all the requirements necessary for final approval. Plaintiff respectfully requests that this Court grant the instant motion and enter the proposed order included herewith.

## II. HISTORY OF THE LITIGATION

### A. Plaintiff's Claims

Plaintiff brought this lawsuit as a class action, alleging that NSC violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, the Massachusetts Credit Reporting Act ("MCRA"), Mass. Gen. Laws ch. 93 §§ 50-67, and the Massachusetts Consumer Protection Act ("MCPA"), Mass Gen. Laws ch. 93A §§ 1-11, by charging excessive amounts for reports made to verify consumers' information regarding their post-secondary education, at their request (the "Self-Verification Service"). Specifically, with respect to the Self-Verification Service, Robinson alleged that NSC charged amounts in excess of caps that the FCRA and the MCRA impose on consumer reporting agencies when providing file disclosures to consumers. Robinson sought to represent two classes of consumers, one encompassing the 49 states outside of Massachusetts, and one of Massachusetts consumers. *See* Dkt. 1. NSC denies Plaintiff's allegations and denies that it committed any violation of the law.

### B. Plaintiff Thoroughly Investigated His Claims

Plaintiff filed his complaint on April 18, 2019. Dkt. 1. Soon thereafter, the parties initiated extensive arms-length settlement discussions, including a full-day, in-person mediation before the

---

[2] The Settlement also provides for an award of attorneys' fees and costs for which Class Counsel has separately moved the Court (*see* Dkts. 27-28) as provided in the Court's order of January 21, 2020. Dkt. 25.

Honorable Diane Welsh (Ret.) of JAMS on August 9, 2019. Before mediation, NSC provided disclosures including the number of class members and total amount of Plaintiff's alleged overcharge. The parties reached an initial agreement that day and notified the Court. Dkt. 17. Documenting a formal settlement agreement and related documents took additional time and included the preparation and exchange of drafts and a series of telephone and written negotiations concerning the specific terms and conditions of the agreement and exhibits to the agreement, including the proposed class notices and class forms. The parties finalized their agreement on January 3, 2020, resulting in the Settlement Agreement attached to Plaintiff's Consent Motion for An Order Directing Notice to the Class. Dkt. 24-1.[3]

## C.    The Notice Program and the Response of Settlement Class Members

On January 21, 2020, this Court entered an Order preliminarily approving the settlement as fair, reasonable and adequate, and directing notice to Settlement Class Members. Dkt. 25. Pursuant to the Court's Order, notice of the pendency of this action, the terms of the proposed settlement, the opportunity to opt out, object or participate, and the date of the July 7, 2020 Final Approval Hearing, was directed to Settlement Class Members by email after the Settlement . Affidavit of Settlement Administrator, attached hereto as Exhibit A. Following deduplication, returns of undeliverable notices, further tracing, and re-mailing, the Settlement Administrator determined that a total of 35,839 Settlement Class Members had received notice and that only 35 were unreachable. *Id*. at ¶¶ 1, 5. Thus, notice successfully reached 99.87% of Settlement Class Members. *Id*. The Settlement Administrator reports no requests for exclusion from the Settlement. *Id*. There are only two objections. *See infra*, § III.C.

---

[3]      The details of the proposed settlement are set forth in Plaintiff's Unopposed Motion for an Order Directing Notice to the Class. Dkt. 24. To avoid burdening the Court, these details have not been repeated here.

### III.    ARGUMENT IN SUPPORT OF FINAL APPROVAL

**A.    The Settlement Class Meets the Requirements of Rule 23 and This Court May Certify It for the Limited Purpose of Settlement**

The parties agree that the Court should certify the Settlement Class for settlement purposes only.  Dkt. 24-1 at § III.A.  Indeed, when this Court entered its Order directing notice to the class, it considered whether the settlement class could be conditionally certified for settlement purposes.  Dkt. 25 at 2.  *See also Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23).  As final approval of the Settlement also involves the determination that certification of the Settlement Class is appropriate, the analysis applies again at this juncture.  Because the Settlement Class meets the requirements for certification under Rule 23(a) and (b)(3), and this Court should certify it for settlement purposes.

**1.    *Numerosity***

The numerosity requirement of Rule 23(a) is satisfied.  Settlement Class Members minimally number in the tens of thousands.  Joinder of all such persons is impracticable.  *See* FED. R. CIV. P. 23(a)(1); *see also Gorsey v. I.M. Simon & Co.*, 121 F.R.D. 135, 138 (D. Mass. 1988) (800 to 900-member class made joinder impracticable).  Indeed, "[no] minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  *Garcia-Rubiera v. Calderon*, 570 F.3d 443, 460 (1st Cir. 2009).  Here, numerosity is satisfied because the class size is 35,839.  Ex. A at ¶ 5.

**2.    *Commonality***

The commonality requirement is satisfied because the proposed Settlement Class Members "have suffered the same injury."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350; 131 S. Ct.

2541, 2551 (2011).  In other words, commonality requires that the claims of the class "depend upon a common contention…of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id*.  Even so, "commonality is a low hurdle."  *Southern States Police Benevolent Ass'n v. First Choice Armor & Equip., Inc.*, 241 F.R.D. 85, 87 (D. Mass. 2007).  Here, many common questions of law and fact exist, but in particular, commonality is satisfied by the following question: whether NSC charged members of the Settlement Class more for its Self-Verification Service than would apply to consumer file disclosures under the FCRA.  *See* FED. R. CIV. P. 23(a)(2); *Duhaime v. John Hancock Mutual Life Ins. Co.*, 177 F.R.D. 54, 63 (D. Mass. 1997) (each class member treated in similar manner).  Here, commonality is satisfied.

### 3.  *Typicality*

The typicality requirement of Rule 23(a)(3) is satisfied because the same conduct applied to Robinson also was applied to other Settlement Class Members.  *See Barry v. Moran,* No. 05-10528-RCL, 2008 WL 7526753, at *11 (D. Mass. Apr. 7, 2008).  Specifically, Plaintiff alleged that NSC charged consumers more than the applicable FCRA-mandated cap for consumer disclosures for the Self-Verification Service.  Typicality is satisfied.

### 4.  *Adequacy*

The adequacy determination under Rule 23(e)(2)(A) looks to whether the representative parties will "fairly and adequately protect the interests of the class" and whether class counsel is "'qualified, experienced and able to vigorously conduct the proposed litigation.'"  *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47, 53 (D. Mass. 2013); *accord In re Payment Card Interchange Fee*, 330 F.R.D. 11, 30-32 (E.D.N.Y. 2019) (considering adequacy requirement of newly amended Rule 23(e)(2) by looking to the interpretation of adequacy under Rule 23(a)); *see Amchem Products v. Windsor*, 521 U.S. 591 (1997) (courts examine whether representative's

interests are antagonistic to or in conflict with those of the class members). Where, as here, the injuries suffered by the named Plaintiff are the same as those that the class is alleged to have suffered, the adequacy requirement is usually satisfied. *Duhaime*, 177 F.R.D. at 63.

Plaintiff Robinson has vigorously prosecuted this action on behalf of the Settlement Class Members by actively participating in this litigation, including assisting his lawyers with gathering information and documents, apprising himself of the bases for his legal claims, and committing to represent the Class. If Robinson had been unwilling to bring this matter and to prosecute it on behalf of other similarly situated, there would be no settlement benefits for Settlement Class Members at all. There is no indication that Robinson has any conflict with any Settlement Class Member.

Furthermore, Robinson has retained highly experienced counsel with expertise in FCRA class action litigation, a factor which supports a finding of the adequacy of counsel. *Lapan v. Dick's Sporting Goods, Inc.*, No. 1:13-CV-11390-R, 2015 WL 8664204, at *3 (D. Mass. Dec. 11, 2015). The National Consumer Law Center, which publishes *Fair Credit Reporting*[4] as part of its 21-volume set of consumer law manuals, is well qualified to represent consumer classes. Its lawyers have been involved in over 140 consumer class action cases, including many in this District.[5] Francis Mailman Soumilas, P.C. has been recognized for its expertise in class action

---

[4]    NATIONAL CONSUMER LAW CENTER, *Fair Credit Reporting* (9th ed. 2017), *updated at* www.nclc.org/library.

[5]    *See, e.g.*, *Morkavage v. Morgan Stanley Dean Witter*, No. 99-40114 (D. Mass); *Pettway v. Harmon Law Offices, P.C.*, No. 03-10932-RCL (D. Mass.); *Mogel v. Unum Life Ins. Co. of Am.*, No. 07-CA-10955 (D. Mass.); *Puello v. Citifinancial/Citigroup*, No. 08-10417 (D. Mass.); *Barrett v. Option One/ H& R Block Bank*, No. 08-10157 (D. Mass.); *Blake v. Riddle & Wood, P.C.*, No. 08-12033 (D. Mass.); *Rodriguez v. Chase Bank USA, N.A.*, No. 1:09-CV-10614 (D. Mass.); *Vander Luitgaren v. Sun Life Assurance Co., et al.*, No. 09-CV-11410 (D. Mass.); *Bosque v. Wells Fargo Bank, N.A.*, No. 10-10311 (D. Mass.); *Johnson v. BAC Home Loans Servicing, LP*, No. 10-10316 (D. Mass.); *Durmic v. J.P. Morgan Chase Bank, N.A.*, No. 10-10380 (D. Mass.); *Belyea v.*

litigation and the high caliber of its work by federal courts throughout the country.[6]  Justice Catalyst Law, a nonprofit law firm, has several currently ongoing class actions and its counsel worked extensively on FCRA issues at the Consumer Financial Protection Bureau, the federal agency tasked with administering the FCRA.  No firm has any conflict with members of the Settlement Class.

Accordingly, Plaintiff and Class Counsel have adequately represented the Settlement Class.

### 5.    *Predominance*

The predominance requirement of Rule 23(b)(3) is satisfied because the common questions present a significant aspect of the case and can be resolved for all members of each Settlement Class in a single adjudication.  *See* FED. R. CIV. P. 23(b)(3); *Waste Mgt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000) (predominance requirement satisfied by "sufficient constellation

---

*Litton Loan Servicing, LLP*, No. 1:10-cv-10931 (D. Mass.); *Otte v. Life Ins. Co. of N. Am.*, No. 09 CV 11537 (D. Mass.).

[6]      *See Kelly v. Bus. Info. Group, Inc.*, No. 15-6668, 2019 WL 414915, *7 (E.D. Pa. Feb. 2, 2019) (Francis Mailman Soumilas "have substantial experience in class action and FCRA consumer litigation and . . . are qualified to conduct the litigation").  Francis Mailman Soumilas recently obtained a jury verdict in a FCRA class action in excess of $60 million. *Ramirez v. Trans Union, LLC*, No. 3:12-cv-632 (N.D. Cal.) (ECF 309), motion for new trial denied, 2017 WL 5153280 (N.D. Cal. Nov. 7, 2017).  *See also Patel v. Trans Union, LLC*, 308 F.R.D. 292, 307 (N.D. Cal. 2015) (noting counsel have "extensive experience in litigating [FCRA cases]…have represented consumer classes in many cases in many districts…[and] have shown their proficiency in this case…"); *White v. Experian Info. Solutions*, 993 F. Supp. 2d 1154, 1169, 1172 (C.D. Cal. 2014) (finding Francis Mailman Soumilas "FCRA specialists" and appointing firm and its team as interim class counsel over objections from competing group because their team's "credentials and experience [we]re significantly stronger in class action and FCRA litigation."), *aff'd sub nom. Radcliffe v. Experian Info. Solutions, Inc.*, 818 F.3d 537, 548 (9th Cir. 2016); *Sapp v. Experian Info. Solutions*, No. 10-4312, 2013 WL 2130956 (E.D. Pa. May 15, 2013); *LaRocque v. TRS Recovery Services, Inc.*, 285 F.R.D. 139 (D. Me. 2012) (certifying Francis Mailman Soumilas as class counsel in consumer class action); *Giddiens v. LexisNexis Risk Solutions, Inc.*, No. 2:12-cv-2624 (ECF 55, ¶ C) (E.D. Pa. Jan. 20, 2015) (order granting final approval and certifying Francis Mailman Soumilas as class counsel).

of common issues [that] bind class members together" and "cannot be reduced to a mechanical, single-issue test"); *Duhaime*, 177 F.R.D. at 64 (D. Mass. 1997) (requirement is "readily met in cases alleging consumer . . . fraud" where claim alleges single course of conduct) (*quoting Amchem*, 521 U.S. at 625). The predominance element has been met here because the claims of the Settlement Class Members and the circumstances under which these claims arise are substantially the same.

### 6. *Superiority*

Rule 23(b)(3) contains four factors a court must analyze in determining whether a class action is superior to individual litigation. These are whether individuals have a strong interest in controlling potentially separate actions; a class action's effect on competing litigation involving members of the class; whether resolution of the case in a single forum is desirable; and the potential difficulties that management of a class action presents. FED. R. CIV. P. 23(b)(3). A class action is the superior method of resolving large scale claims if it will "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. One reason that a class action is the superior method of proceeding in a case of this type is that it allows the plaintiffs "to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). Here, because each Settlement Class Member's claim is relatively insignificant, it is uneconomic for individuals to pursue these claims on their own, and therefore unlikely they will do so. *See Grace v. Perception Technology, Inc.*, 128 F.R.D. 165, 171 (D. Mass. 1989); *Randle v. SpecTran*, 129 F.R.D. 386, 393 (D. Mass. 1988).

### 7. *Manageability*

Finally, any possible difficulties of managing a class action are vitiated by the fact of this Settlement Agreement. When "confronted with a request for settlement-only class certification, a

district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

For all the foregoing reasons, the Settlement Class may be certified for settlement purposes upon final approval.

**B.      The Proposed Settlement Is Fair, Reasonable and Adequate**

Upon a showing that a proposed settlement meets the requirements of Rules 23(a) and (b), a court may approve a settlement in a class action that is "fair, reasonable, and adequate" upon consideration of whether:

(A)      the class representatives and counsel have adequately represented the class;

(B)      the proposal was negotiated at arm's length;

(C)      the relief provided for the class is adequate, taking into account:

      (i)      the costs, risks, and delay of trial and appeal;

      (ii)      the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

      (iii)      the terms of any proposed award of attorney's fees, including timing of payment; and

      (iv)      any agreement required to be identified under Rule 23(e)(3);[7] and

(D)      the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).

A presumption of fairness attaches to a proposed settlement agreement "when the court finds that: (1) the negotiations occurred at arm's length; (2) was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Lupron Mktg. & Sales Practices Litig.*, 345 F. Supp. 2d 135, 137 (D.

---

[7]      This consideration is not applicable here because no such agreements exist.

Mass. 2004) (internal quotations and citations omitted)); *see also Bezdek v. Vibram USA, Inc.*, 809 F.3d 78, 82 (1st Cir. 2015) (Although "[t]he case law offers 'laundry lists of factors' pertaining to reasonableness . . . 'the ultimate decision by the judge involves balancing the advantages and disadvantages of the proposed settlement as against the consequences of going to trial or other possible but perhaps unattainable variations on the proffered settlement.'") (quoting *Nat'l Ass'n of Chain Drug Stores v. New England Carpenters Health Benefits Fund*, 582 F.3d 30, 44 (1st Cir. 2009)). Here, the Rule 23(e)(2) factors are met and final approval of the proposed settlement is appropriate.

### 1. *Plaintiff and Class Counsel Have Adequately Represented the Class*

As set forth above, Plaintiff and Class Counsel satisfy Rule 23(a)(4)'s adequacy requirement. Moreover, they have adequately represented the Class in negotiating a highly advantageous result to this litigation, embodied in the proposed settlement here.

### 2. *The Settlement Agreement Is the Result of Engaged, Arms-Length Negotiations Overseen by an Experienced Mediator*

Rule 23(e)(2)(B) instructs a court to consider whether the proposed settlement was negotiated at arm's length. There is typically an initial presumption that a proposed settlement is fair and reasonable when it was the result of arm's-length negotiations between experienced, capable counsel after meaningful exchange of information relevant to settlement. *See, e.g.*, *In re Payment Card Interchange Fee*, 330 F.R.D. at 34-35; *Bezdek v. Vibram USA, Inc.*, 79 F. Supp. 3d 324, 343 (D. Mass. 2015), *aff'd*, 809 F.3d 78 (1st Cir. 2015) ("There is a presumption that a settlement is within the range of reasonableness when sufficient discovery has been provided and the parties have bargained at arms-length."). Such a presumption is appropriate here.

The Settlement Agreement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class action litigation and with the legal and factual

issues of this case. Plaintiff's counsel is particularly experienced in the litigation, certification, and settlement of FCRA cases similar to this case. In negotiating the Settlement Agreement, counsel also had the benefit of years of experience litigating class actions and a familiarity with the facts of this case. Moreover, the parties engaged in an extensive and contested mediation before an experienced mediator, retired Magistrate Judge Diane Welsh. Prior to their sessions, the parties prepared memoranda and exchanged information relevant to settlement, which was reached only after both Class Counsel and Defendant's Counsel were fully informed of the facts and following extensive adversarial negotiations. This factor also therefore supports final approval of the proposed settlement.

### 3. *The Settlement Provides Substantial Relief for Settlement Class Members*

The proposed settlement provides substantial benefits to all Settlement Class Members, including important changes to NSC's practices that will help to prevent a repetition of the conduct alleged in the Complaint. In addition to reducing how much it charges consumers for the Verification Service, NSC has agreed to make cash payments to Settlement Class Members that significantly exceed the amount of overcharge incurred by Settlement Class Members.

The benefits provided in the Settlement are fair and reasonable in light of the risks of continued litigation and the financial condition of the Defendant, and the method of distribution of the proposed Settlement Fund is effective in light of the available data regarding Settlement Class Members.

### 4. *The Settlement Agreement Is a Preferable Alternative to the Risks Each Party Would Face Through Continued Litigation*

The proposed settlement provides all of the significant benefits described above to Settlement Class Members without the risks, costs, and delays inherent in continued litigation, trial, and appeal. The expense, complexity, and duration of litigation are important factors

considered in evaluating the reasonableness of a settlement. *See, e.g., Bacchi v. Massachusetts Mut. Life Ins. Co.*, No. 12-11280-DJC, 2017 WL 5177610, at *2 (D. Mass. Nov. 8, 2017); *Roberts v. TJX Cos., Inc.*, No. 13-cv-13142-ADB, 2016 WL 8677312, at *6-7 (D. Mass. Sept. 30, 2016).

Plaintiff is confident that if the parties were to continue to litigate this matter, he would be successful in certifying the proposed Settlement Class on contest. Plaintiff anticipates, however, that NSC would raise substantive opposition to the certification of any class, including through the vehicle of appellate review pursuant to FED. R. CIV. P. 23(f).

Even if Plaintiff succeeded in certifying one or more classes, he would still face the task of proving liability on the merits of his claims, including the risks associated with a possible motion for summary judgment, and the even greater risks, uncertainty, delay, and expense of trial. Then, even if Plaintiff succeeded in passing the liability hurdle, the parties would continue to battle over whether Plaintiff and other Settlement Class Members have sustained damages, and if so, the proper measure of those damages. Plaintiff has also avoided the considerable risks in obtaining statutory damages by virtue of the proposed settlement. The determination of statutory damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting opinions. While the FCRA provides for statutory damages for willful conduct in the range of $100 to $1,000 per class member, 15 U.S.C. § 1681n, numerous statutory factors would have to be taken into account in calculating such an award, including the frequency and persistence of noncompliance with the statute, nature of the noncompliance, and extent to which noncompliance was willful or negligent. *See* 15 U.S.C. § 1681n(a) & § 1681o(a). Defendant NSC

would vigorously assert an array of defenses to a claim of willfulness.[8]  These battles would be fought not only before and at trial, but also on appeal.

By contrast, the proposed settlement provides significant prospective and monetary benefits to the Settlement Class without the above risks.  Now that an accurate count of Settlement Class Members has been made, *see* Ex. A, Settlement Awards will be $33.45 in cash,[9] plus an additional $12.50 in the value of the free verification.  This total amount—$45.95—is nearly fivefold the average amount each Settlement Class Member was actually overcharged, namely $9.41.  Settlement Awards will thus be in line with other court-approved FCRA settlements.[10]

---

[8]    For example, NSC would likely argue that it could take advantage of the safe harbor that stems from the Supreme Court's decision in *Safeco Ins. Co. of Am. v. Burr*, in which it held that "a company subject to FCRA does not act in reckless disregard of it [*i.e.*, willfully] unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless."  551 U.S. 47, 69 (2007).  Exceptions to this safe harbor exist.  *See, e.g., Cortez v. Trans Union, LLC*, 617 F.3d 688, 721 (3d Cir. 2010) ("A credit reporting agency may also willfully violate the FCRA by adopting a policy with reckless disregard of whether it contravenes a plaintiff's rights under the FCRA.")  Nevertheless, willfulness is likely to be highly contested if the proposed settlement is not finally approved.

[9]    This calculation assumes that the Court will approve in full the requested attorneys' fees and costs and individual settlement and service award for Plaintiff.  This would leave $1,198,746.27 in the Settlement Fund for distribution to 35,839 Settlement Class Members.

[10]    *See, e.g., Patel v. Trans Union, LLC*, No. 14-cv-00522-LB, 2018 WL 1258194, at *2-3 (N.D. Cal. Mar. 11, 2018) (automatic payment of $400.00 to each class member, with the right to submit a claim for an additional payment); *Flores v. Express Services, Inc.*, No. 14-3298, 2017 WL 1177098, at *1 (E.D. Pa. Mar. 30, 2017) (approval of FCRA settlement with $50 automatic payment to 32,000 member class, with option to seek additional payment from damages fund); *Carter v. Shalhoub Mgmt. Co., Inc.*, No. EDCV-15-01531-MWF-(JCx), 2017 WL 5634300 (C.D. Cal. Mar. 15, 2017) (automatic payment of $276 to each class member); *Patrick v. Interstate Mgmt. Co., LLC*, No. 15-cv-1252 (ECF 49) (M.D. Fla. Apr. 29, 2016) (approving settlement of FCRA disclosure claim where class members received $9 each); *King v. Gen'l Info. Serv's, Inc.*, C.A. No. 10-6850 (ECF 125) (E.D. Pa. Nov. 14, 2014) (challenging practice of reporting outdated adverse non-conviction records; class members paid $49.68 each); *Robinson v. Gen'l Info. Serv's, Inc.*, C.A. No. 11-7782 (ECF 55) (E.D. Pa. Nov. 4, 2014) (challenging practice of failing to notify consumers that consumer reporting agency was reporting to prospective employers; class members paid $49 each); *Marcum v. Dolgencorp, Inc.*, No. 12-cv-108 (ECF 78) (E.D. Va. Oct. 16, 2014) (approving settlement that pays inadequate disclosure class members $53 each); *Simons v. Aegis*

5. ***The Proposed Award of Attorney's Fees Is Fair and Reasonable***

Plaintiff's Counsel has negotiated a settlement that establishes a common fund to benefit all Settlement Class Members. *See* Dkt. 24-1 at § II.C. As set forth in Plaintiff's Motion for Attorney Fees, Reimbursement of Expenses, and Service Award, Class Counsel requested an award of attorneys' fees and costs in the amount of $750,000, which is 28% of the total value created by the settlement. *See* Dkts. 27-28. This figure is well within the range of reasonableness within the First Circuit and this Court should finally approve the proposed settlement.

6. ***The Method of Providing Relief Will Be Effective***

The relief provided for in the Settlement Agreement will be distributed through prospective relief and through cash payments from the Settlement Fund. Each of these methods will effectively address the experiences of the Settlement Class Members, as alleged in the Complaint.

First, all Settlement Class Members, as well as untold numbers of future consumers, will benefit from the implementation of the practice changes provided by the prospective relief provision of the Settlement Agreement.

Second, the Settlement Agreement establishes a process for distributing Settlement Awards to Settlement Class Members who paid NSC more than the applicable FCRA-mandated cap for the Self-Verification Service. The distribution process guarantees that Settlement Class Members, who have already been identified by NSC, will receive a Settlement Award without having to take any additional action. Dkt. 24-1 at §§ III.D, III.F.1.

---

*Comm's Group*, No. 2:14-cv-04012 (ECF 29) (W.D. Mo. Oct. 15, 2014) (approving improper disclosure settlement with payment of $35 per class member).

## 7. *The Settlement Treats All Settlement Class Members Fairly*

The proposed settlement treats Settlement Class Members fairly. It identifies them based upon the transactions that Robinson had with NSC and the claims that he brought in the lawsuit as a result.

First, Robinson purchased Self-Verification Service from NSC and was charged more than the then-applicable FCRA-mandated consumer disclosure cap. Although NSC denies any violation of the law, Robinson claimed that this was a violation of FCRA section 1681j. NSC investigation has revealed 57,248 other Self-Verification Service *transactions* within the statute of limitations period for which NSC charged more than the applicable cap. These 35,839 *individuals* (see Ex. A at ¶ 5) will receive a free verification through the Self-Verification Service from NSC. Dkt. 24-1 at § III.F.2. Moreover, they will also receive $33.45 in cash.[11] *Id*. at § III.F.1. NSC will also change how much it charges consumers for the Self-Verification Service, bringing them in line with the FCRA cap. *Id*. at § III.F.2.

In sum, all Settlement Class Members will receive a cash payment in an equal amount and will benefit from a free verification report from NSC. Furthermore, everyone who uses NSC's Self-Verification Service in the future will never pay more than the then-applicable FCRA consumer disclosure cap. Finally, the Settlement Fund is non-reversionary. Any funds remaining in the Fund after distribution of Settlement Awards will be donated as *cy pres* monies as approved

---

[11] In his complaint, Robinson sought to represent a subclass of Massachusetts consumers on the theory that under that NSC had overcharged Massachusetts residents in violation of the MCRA, which provides that a consumer reporting agency may only charge $8 for a consumer disclosure. *See* MASS. GEN. LAWS ch. 93 § 59(c). The parties' settlement, which provides monetary relief to all Settlement Class Members in excess of what the average Massachusetts subclass member was actually overcharged obviates the need for treating the Massachusetts subclass differently.

and directed by the Court.  *Id*. at § III.F.4.  This arrangement treats all Settlement Class Members fairly.

## C.     The Objections Are Without Merit and Should Be Overruled

### 1.     *Objector Paúl Camarena*

Paúl Camarena ("Camarena") objects to the proposed settlement on three flawed bases, namely (1) that Class Counsel failed to properly notify the class of statutory damages available under the FCRA; (2) that Class Counsel sold out the class for too little, letting NSC off the hook; and (3) that Class Counsel failed to account for the hours worked on this matter in sufficient detail in its fee petition.  Dkt. 29.  This Court should overrule Camarena's objections.

Camarena's first objection, essentially a challenge to Class Counsel's compliance with Rule 23(c)(2)(B)(iii), fails. Rule 23(c)(2)(B) contains no requirement to notify class members of damages *potentially* recoverable under a given statute.[12]  Rather than encouraging more Settlement Class Members to exclude themselves or object to the proposed settlement, as Camarena speculates, the inclusion of information about speculative recoveries in class notices could instead mislead class members.  *See Kandel v. United States*, 115 Fed. Cl. 749, 751 (2014) (finding that it "would be misleading to entice the participation of potential plaintiffs based on a promise of additional damages" by amending class notice to include reference to potential availability of prejudgment interest).[13]  Class Counsel's notice to the class, which this Court has already found in

---

[12]     *See, e.g., McCurley v. Royal Seas Cruises, Inc.*, No. 17-CV-00986-BAS-AGS, 2019 WL 3817970, at *5 (S.D. Cal. Aug. 14, 2019) ("Rule 23 does not require class notice to identify all issues or defenses that have been or will be presented in a certified class action."); *Van Horn v. Nationwide Prop. & Cas. Ins. Co*., No. 1:08-CV-605, 2009 WL 773869, at *5 (N.D. Ohio Mar. 19, 2009) ("[T]he Court need not include every affirmative defense that a defendant proposes if the notice otherwise fairly informs absent class members of the action.").  *Cf* 15 U.S.C. § 78u-4(a)(7) (specific notice requirements regarding settlement of private securities litigation).

[13]     Objector Camarena's unsupported assertion that "consumer reporting agencies regularly pay the statutory maximum of $1,000 to individual consumers," Dkt. 29 at 3, is not only entirely

compliance with Rule 23(c), informs Settlement Class Members of their rights and provides a realistic estimate of what they can expect to receive if they remain in the Class.[14] This Court should overrule Camarena's first objection.

Camarena's second objection is related to the first because he believes that Class Counsel should have held out for at least $100 per class member, the bottom end of the range for statutory damages under FCRA section 1681n(a)(1)(A). His objection fails, among other reasons, because FCRA statutory damages are only available in cases of a *willful* violation of the statute.[15] Glossing over the complex issue of willfulness completely, Camarena ignores the numerous substantive defenses that Defendant NSC could have deployed against a finding of willfulness in this matter. As noted above, these challenges favor granting final approval of the proposed settlement. *See supra* at § III.B.4. Indeed, numerous courts have finally approved class action settlements of FCRA claims for less than a minimum payment of $100 per class member.[16] Moreover, Camarena erroneously states that the proposed settlement will "absolve the Defendant of almost all of its other statutory responsibilities." Dkt. 29 at 4. Quite the opposite is true because the proposed settlement requires NSC to change the price it charges for the Self-Verification Service, bringing

---

beside the point because this is not an individual case, but precisely the sort of language that could mislead class members. Indeed, even upon a showing of conduct that the Ninth Circuit Court of Appeals called "reprehensible," jurors in an FCRA trial awarded class members $984.22 each in FCRA statutory damages, not the $1,000 maximum. *Ramirez v. TransUnion, LLC*, 951 F.3d 1008, 1021, 1031 (9th Cir. 2020).

[14]    As the proposed settlement provides that each Settlement Class Member will be paid automatically, the $20.93 per person is not an optimistic estimate, but rather a baseline.

[15]    In relevant part, section 1681n provides that "Any person who *willfully* fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of—any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000[.]" 15 U.S.C. §1681n(a)(1)(A) (emphasis added).

[16]    *See supra*, note 10.

its policies into compliance with the applicable FCRA cap. Dkt. 24-1 at § III.F.2. Many courts have held that such nationwide injunctive relief is not an available remedy under the FCRA because such power was granted instead to the Federal Trade Commission. *See Washington v. CSC Credit Services, Inc.*, 199 F.3d 263, 268 (5th Cir. 2000). This Court should overrule Camarena's second objection.

Third, Camarena argues that Class Counsel's fee request is unreasonable because its time entries were not itemized. ECF No. 29 at 4-5. This argument fails because courts in the First Circuit have repeatedly embraced the percentage-of-the-fund means of calculating attorneys' fees, used by Class Counsel in its fee petition. *See In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Thus, Camarena's baseless criticism of Class Counsel's hours worked and hourly rates do not undermine the reasonableness of Class Counsel's thoroughly documented and supported request for attorneys' fees. *See* Dkts. 27-28.

This Court should overrule Camarena's objections and finally approve the proposed settlement.

### 2. *Objector Daniel P. John*

Objector Daniel P. John's objection contains multiple obvious errors with respect to the relief available to Settlement Class Members relative to the amount of attorneys' fees sought by Class Counsel.[17] For example, Class Counsel is not "claiming a large fee of $750 million for themselves," and Settlement Class Members will receive far more than $2. This Court should overrule his objection.

---

[17] This objection does not appear to have been filed with the Clerk, but was received by counsel for NSC and is attached hereto as Exhibit B.

**3.** ***On Balance, the Reaction of Settlement Class Members Supports Final Approval***

Aside from the two meritless objections discussed above, reaction to the proposed settlement has been very positive, especially given the large number of highly educated Settlement Class Members who received notice of the proposed settlement. *See* Ex. A. This supports granting final approval to the proposed settlement. *See, e.g.*, *Bezdek*, 79 F. Supp. 3d at 347 (finally approving settlement with "only 23 opt-outs and 3 objections"); *In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 72 (D. Mass. 2005) (finally approving settlement with 140 opt-outs and 10 objections); *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 96 (D. Mass. 2005) (finally approving settlement with 49 opt-outs and 10 objectors).

## IV.   CONCLUSION

For all the foregoing reasons, Plaintiff respectfully requests that this Court grant the instant Motion, finally approve the proposed settlement, and enter the proposed order included herewith.

DATED:   June 5, 2020                          Respectfully submitted,

**JAMES ROBINSON**, *by his attorneys*,

*/s/ Stuart T. Rossman*
Stuart T. Rossman, B.B.O. No. 430640
NATIONAL CONSUMER LAW CENTER
7 Winthrop Square, 4th Floor
Boston, MA 02110
Tel: (617) 542-8010
srossman@nclc.org

Joanna Darcus, B.B.O. No. 601146
NATIONAL CONSUMER LAW CENTER
1001 Connecticut Avenue NW, Suite 510
Washington, DC 20036
(202) 452-6252 tel.
(202) 296-4062 fax
jdarcus@nclc.org

Benjamin David Elga*
Brian James Shearer*
JUSTICE CATALYST LAW
81 Prospect Street
Brooklyn, NY 11201
518-732-6703
belga@justicecatalyst.org
brianshearer@justicecatalyst.org

James A. Francis*
John Soumilas*
FRANCIS MAILMAN SOUMILAS, P.C.
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com
jsoumilas@consumerlawfirm.com

*admitted *pro hac vice*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 5, 2020, he electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Stuart T. Rossman*
Stuart T. Rossman